ELIZABETH M. REINHARD, Plaintiff, *v.* THE SIDNEY B. ROBY COMPANY and LOUISA REINHARD, Defendants.

(Supreme Court, Monroe Equity Term, January, 1920.)

Actions — when wife entitled to maintain action to compel a transfer of stock — corporations — evidence.

A wife, upon receiving from her husband certain unindorsed certificates of stock as a wedding present, handed them to a friend then present, with instructions to keep them for her, and they were retained by him until shortly after the death of her husband and then returned to her. It appeared that two dividends of substantial amounts on the stock were received by the husband, accounted for and deposited to the individual bank account of the wife. *Held,* that the wife was entitled

to maintain an action to compel a transfer of the stock to her upon the books of the corporation, as had her husband lived she could have enforced his obligation to complete the transfer by making the necessary indorsement upon the certificates.

ACTION to compel transfers of certain shares of stock.

Byron A. Johnson, for plaintiff.

Bernhard & Ingalsbe (George A. Benton, of counsel), for defendants.

SAWYER, J. Plaintiff brings this action to compel transfer to her upon the books of the defendant Roby Company of certain shares of its stock now standing thereon in the name of Paul O. Reinhard.

It appears that she and the said Paul O. Reinhard were married September 3, 1918, at Rochester, N. Y. Following the ceremony and as they were about to start on their wedding journey Mr. Reinhard handed the certificates of stock to plaintiff with the statement that he wanted her to have them; almost immediately and in his presence she called them to the attention of her sister saying, " See what Paul has given me for a wedding present! " Upon their further examination by those present attention was called to the fact that they had not been indorsed by Mr. Reinhard, when at the suggestion of Mr. Vaisey, who had been present during the whole transaction, it was decided to leave them unindorsed until after the return of Mr. and Mrs. Reinhard for the reason that " they would be safer," the parties evidently having in mind the danger of their being stolen during their absence.

Thereupon plaintiff handed them to Mr. Vaisey with instructions to keep them for her. The certificates were accordingly placed by Mr. Vaisey with his own valuable papers and were there continuously retained

by him until some time in March, 1919, when he
returned them to plaintiff.

Mr. Reinhard died intestate from influenza upon
February 16, 1919, having between his marriage and
that date received two dividends of substantial
amounts upon the stock in question, both of which
dividends were accounted for by him to plain-
tiff and deposited in her individual bank account.
Transfer of the stock to her upon the books of the
defendant corporation has been demanded since his
death, and refused because of the lack of his indorse-
ment upon the certificates together with the absence
therefrom of the stamps evidencing payment of the tax
required by section 270 of the Tax Law.

Defendants now insist that Mr. Reinhard did not
intend to place the ownership of this stock in plaintiff,
but, on the contrary, to retain it under his own
dominion and control.

In other words that he deliberately deceived and
cheated his bride within an hour after her marriage.

To me the supposition is unthinkable. What other
object had he in view than to give it to her outright?
If he wanted to keep the stock for himself he was free
to do so. The marriage ceremony was over and she
was his wife; so far as appears she had never even
heard of the stock. What gain to him can be imag-
ined from so preposterous an act as is now claimed
for him? On the other hand, a genuine gift to her was
under the circumstances the most natural thing in the
world and comports with common knowledge of lovers
and young husbands.

A fair inference from the testimony is that but for
the suggestion of Mr. Vaisey he would have indorsed
the certificates then and there, but apparently none
of them knew or at least did not think of the provisions
of the Tax Law.

That he delivered them to her intending by such delivery to transfer to her as a wedding present the legal title and ownership of the stock represented by the certificates, and ever after believed he had done so effectually is the only logical conclusion to be drawn from the evidence, and I am fully persuaded such belief was well founded in law.

Many adjudicated cases upon the subject of gifts *inter vivos* have been submitted by counsel in opposition to this conclusion. Generally stated, they go no further than to hold that such a gift must, to be effective, divest the donor of entire ownership and vest same in the donee.

The latest of these is *Matter of Cohn*, 187 App. Div. 392. Defendant quotes approvingly from the dissenting opinion of Mr. Justice Page in that case but the sentences quoted are based upon cited decisions where the facts failed to disclose intention of the donor to irrevocably part with the ownership of his property.

Here such intention is shown beyond successful contradiction.

The *Cohn Case, supra,* involved a gift *inter vivos,* and not *causa mortis,* although the death of the donor occurred six days later. There was neither delivery, indorsement of the certificates of stock nor payment apparently of the tax. The gift was to the wife as a birthday present (while here it was for a wedding present) and was evidenced only by a paper writing declaring the fact of giving. The transaction was held to effect a gift *inter vivos* of the stock.

In *Herbert* v. *Simson,* 220 Mass. 480, it was held that a valid gift so as to pass the equitable title is effected by the delivery and acceptance of a certificate of stock in a corporation, with intent to pass the title, but without any written assignment or indorsement, although

the certificate is made transferable only on the books of the corporation. The gift then under consideration was one *inter vivos*, although the action arose after the death of the donor.

A very interesting discussion of this general subject may be found in the note appended to *Talbot* v. *Talbot*, 24 Am. & Eng. Ann. Cas. 1221–1235, where after collating the decisions of the various jurisdictions, the annotator states that in a majority of cases wherein the question has arisen, it has been held that the delivery of a certificate of stock without formal indorsement or assignment, or without registering it in the name of the donee, is sufficient to constitute it a valid gift, if the intent of the donor at the time is forthwith to pass title to the donee. The requirement of a corporation that stock transfers shall be registered seems in these cases to be regarded as affecting the shareholder's relations to the corporation only, and not his relation to a third party who may become equitably possessed of the stock.

It is true that the formal transfer of the bare legal title has not been had in the instant case (Pers. Prop. Law, § 183) but a delivery of the stock certificates with intent therewith to transfer the full legal title is fully established and, thereby, under the cases and in good conscience plaintiff became the owner of the stock in equity and that ownership according to the intent of the parties must be sustained.

Such a situation as this falls within the provisions of section 170 of the Personal Property Law and imposed upon Mr. Reinhard the duty, had he lived, of completing the transfer by making the necessary indorsement. Plaintiff could have enforced that obligation against him and I can see no reason why she may not have like relief from his personal representative.

The penal section of the Tax Law (278) provides that payment of the tax shall be made at the time of the transfer, which by section 170 of the Personal Property Law is deemed to take effect when the indorsement is actually made, so that there is as yet no default in payment of the tax and the prohibition of the section has not come into operation.

*Luitweiler* v. *Luitweiler Pumping Engine Co.,* recently decided by the Appellate Division in this department (190 App. Div. 80) must be distinguished from the case at bar for the reason that indorsement of the shares there in controversy had been made, as well as delivery to the litigating holder, and because of such difference in facts is not an authority against the determination here reached.

Upon the trial plaintiff, as administratrix of Mr. Reinhard, offered to properly indorse such certificates and to affix and cancel the tax stamps required by the statutes, and asked permission of the court so to do.

Such permission is granted and I hereby appoint the 27th day of January, 1920, at two o'clock P. M. at the courthouse in Rochester, N. Y., for a further hearing in this case, whereat the certificates may be again offered in evidence, properly indorsed and stamped by the administratrix of Mr. Reinhard, and the findings directing their transfer upon the books of the Sidney B. Roby Company then and there formally announced and judgment directing such transfers ordered.

This further hearing is likewise solely at the request of the plaintiff, for in my opinion, upon the case as it stands, defendants' motions made at the close of the evidence should be denied and judgment directed for plaintiff, with costs.

Judgment for plaintiff, with costs.