## Fred W. Patterson, Appellee, v. Fitzpatrick McElroy Company et al., Defendants, on Appeal of Roderick Morange, Appellant.

## Gen. No. 31,871.

1. CORPORATIONS—*consideration for transfer of stock.* Where the owner of a certificate of stock transfers it to a stockbroker to protect his purchase on margin of other stock, and the broker sells the stock to another customer and applies the purchase price on an amount owing the latter customer, there is a consideration for both transfers of the stock.

2. CORPORATIONS—*assignment of stock certificate by blank indorsement.* Where the owner of a certificate of stock in pledging it with a stockbroker as margin indorses his name under a blank assignment and blank power of attorney to transfer the stock, and the broker sells and transfers the certificate to a third person, held that the assignment complied with the provision of the Uniform Stock Transfer Act, Cahill's St. ch. 32, ¶¶ 229, 248-250, and that the *bona fides* of the purchaser was not open to question under Cahill's St. ch. 32, ¶¶ 235, 236, although the purchaser wrote his name in the blank spaces in the assignment and power of attorney without authority from the original owner.

3. CORPORATIONS—*origin of Uniform Stock Transfer Act.* The Uniform Stock Transfer Act, Cahill's St. ch. 32, ¶ 329 *et seq.,* is a mere codification of common-law principles.

4. EVIDENCE—*presumptions of law existing in sister State.* In the absence of proof as to the laws of Delaware it will be presumed that the common law prevails in that State.

Appeal by defendant from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1927. Affirmed. Opinion filed December 27, 1927.

ROSENBERG & ZIMMERMAN, for appellant; BENJAMIN NELSON, of counsel.

LEESMAN, ROEMER & SCHNELL, for appellee.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

Appellee filed his bill of complaint against Fitzpatrick McElroy Company, a corporation organized under the laws of the State of Delaware, and the West Englewood Trust & Savings Bank, the transfer agent and registrar of said company, to compel the transfer to appellee on said company's books of a certificate for 32 shares of said company's preferred stock standing in the name of appellant Roderick Morange, and to decree that appellee be the owner of said certificate, and for an accounting for the dividends that had accrued and were payable on said shares from the time he acquired said certificate.

Said defendant company and said bank filed their joint answer averring that the controversy is entirely between complainant and defendant Morange, and that they are ready and willing to abide by the decree of court and to comply therewith.

Appellant Morange became a party to the cause on his own motion and filed an answer denying appellee was a bona fide purchaser of the certificate for a valuable consideration, or that the certificate was transferred by him to Ruhny Borsh & Company (hereinafter referred to) for a valuable consideration, and averred that the latter company had no authority to sell or assign the same, and no title thereto or interest therein. Appellant also filed a cross-bill making sub-

stantially the same averments and claiming that he is, and since its issuance has been, the owner of said certificate and the stock represented thereby, and asking that complainant be required to surrender said certificate to cross complainant.

From a decree granting the relief prayed for in the bill this appeal is taken.

The controlling facts are not in dispute. The certificate of stock in question was issued and stood on the books of Fitzpatrick McElroy Company in the name of appellant. In February, 1925, he bought 150 shares of Sinclair stock from the brokerage firm of Ruhny Borsh & Company on margins, paying only a part of the purchase price. The stock having declined he later in the month concluded to pay in full for 50 of said shares and sent the certificate in question to see if the brokerage firm could use it to that end. The firm reported that it could borrow from its bank $2,400 thereon. Thereupon on February 27 he indorsed the certificate underneath a blank assignment and blank power of attorney to transfer the stock on the books, and delivered it to the firm.

Appellee Patterson also had a stock account with said brokerage firm which he directed closed and on which he had a profit of over $5,000. On February 27 he called on the firm to get a check for such balance and was told that the signature of an absent member of the firm who would return the following Monday was necessary. At the same time he was offered and induced to purchase the certificate of stock in question at its par value of $3,200 and to have it charged against his credit. On delivery of the certificate to him he wrote his name in the blank space for the name of the assignee and in the blank space for the name of the attorney to make the transfer. The next day appellant ordered his account closed. About March 7 appellee presented his certificate for transfer on the books of the Fitzpatrick McElroy Company. The company re-

fused to make the transfer because in the meantime appellant had objected thereto. Shortly afterwards both appellant and appellee learned that the brokerage firm had failed and closed its offices. Neither of them received any further statement of his account from said firm, and the record does not disclose the status of either at the time the firm discontinued business.

The findings in the decree accord with this statement of facts and present the question whether title to the certificate passed to appellee.

That there was a consideration both for the transfer from appellant to the brokerage firm and for the transfer from the latter to appellee is hardly open to question. It is urged, however, that there was not sufficient proof to support a transfer of appellant's title under the Uniform Stock Transfer Act. (Cahill's St. 1927, ch. 32, ¶¶ 229–253 inc.) The argument hinges on the statutory definitions of terms employed in section 1 of said act. (Par. 229 id.) So far as applicable, section 1 reads:

"Title to a certificate and to the shares represented thereby can be transferred only:

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby."

The definitions referred to are found in sections 20, 21 and 22, which read:

"§ 20. A certificate is indorsed when an assignment or a power of attorney to sell, assign, or transfer the certificate or the shares represented thereby is written on the certificate and signed by the person appearing by the certificate to be the owner of the shares rpresented [represented] thereby, or when the signature of such person is written, without more upon the back of the certificate. In any of such cases a certificate is indorsed, though it has not been delivered.

"§ 21. The person to whom a certificate was originally issued is the person appearing by the certificate to be the owner thereof, and of the shares represented thereby, until and unless he indorses the certificate to another specified person, and thereupon such other specified person is the person appearing by the certificate to be the owner thereof until and unless he also indorses the certificate to another specified person. Subsequent special indorsements may be made with like effect.

"§ 22. * * * 'Certificate' means a certificate of stock in a corporation organized under the laws of this State or of another state whose laws are consistent with this Act.

" 'Delivery' means voluntary transfer of possession from one person to another. * * * "

That there was a "delivery" according to the definition thereof both from appellant to the broker and from the broker to appellee, and that appellant is the person to whom the certificate was originally issued and appeared thereby to be the owner thereof at the time of his alleged indorsement, are not questioned. But it is urged that because the name of Patterson as so filled in was no part of the assignment of the certificate by appellant to the brokerage firm it was not assigned to appellee by his authorization and therefore he is still the owner of said certificate, and that the assignment under which appellee claims was not in compliance with the requirements of said transfer act, and that appellee is not a bona fide holder of the certificate within the meaning of said act, but occupies the position of an assignee of an ordinary instrument or chose in action, which is subject to all defenses that may have been made against said brokerage firm.

Most, if not all of these contentions, are fully answered, we think, in *McCarthy v. Crawford*, 238 Ill. 38, where like points were raised upon similar facts except that the instrument there in question was a

receiver's receipt of an indebtedness much in the form of a certificate of stock. The principles, however, upon which the case was decided were those held applicable to a certificate of stock. On the back of said receipt was a like printed form of assignment and power of attorney to transfer on the books of the company for which the receiver was appointed, and an indorsement by the person to whom it was issued without filling up the blanks left for the names of a transferee and attorney. Such assignment was referred to, however, and regarded as an assignment in blank, as was the certificate of stock in *Otis v. Gardner,* 105 Ill. 436, where the effect of a transfer by a like indorsement was considered. It was held in the *Crawford* case that such an indorsement and delivery to a broker, whatever the owner's motive, clothed the broker with the *indicia* of ownership, and that the transfer on the books was a matter in which the indorser was not concerned but was for the protection and convenience of the transferee and the issuer of the certificate. It was there said: .

"The law has been generally established that as between the parties the transfer of stock by delivery of the certificate, with power of attorney or endorsed in blank, passes title without transfer on the books of the company, even when the by-laws of the company provide to the contrary. (Authorities). Such blank transfer on the back of the certificate, to which the holder has affixed his name, is a good assignment and the party to whom it is delivered is authorized to fill it up. It may be filled up with the name of a remote transferee, and the name to be inserted concerns only the purchaser. (Authorities)."

We find nothing in the Uniform Stock Transfer Act inconsistent with this statement of the law as it existed before its passage. Section 1 of the act expressly states that title to a certificate may be transferred by

delivery thereof indorsed in blank, and such an indorsement was made in this case.  To be sure, the owner may specify the transferee if he chooses, but if he does not, we find nothing in the act which precludes the right of a transferee to insert his name as such in the blank form over the indorsement.  As held in the *Crawford* case, such a specification of the transferee is a matter which concerns only such transferee and the company on whose books the transfer is sought to be made.  With respect to these formalities or requirements the Uniform Stock Transfer Act is a mere codification of common-law principles.

The principles upon which both the cases of *McCarthy v. Crawford* and *Otis v. Gardner* rest, are that where "one of two or more persons must suffer loss, upon him whose conduct made it possible for loss to occur should the consequences ultimately rest," and that by such indorsement and delivery by the owner the holder or assignee would be presumed to make any legitimate use of the certificate that the original owner might make and the indorser would be estopped from claiming that the transfer was not for value.  "Such an estoppel generally arises from the fact that the owner has delivered his certificate to a third person indorsed in blank." (Fletcher Cyclopedia Corporations, vol. 11, § 3853; *Casey v. Kastel,* 119 N. Y. Misc. 116, 195 N. Y. Supp. 848.)  It has been held in some jurisdictions that the mere delivery of the certificate with intent to transfer the shares represented thereby was sufficient without any indorsement or written assignment, but in the absence of an agreement to that effect, the Uniform Stock Transfer Act contemplates either a written indorsement in blank, such as was made here, or an indorsement to a specific person. (Sections 1 and 9; Fletcher Cyclopedia Corporations, vol. 6, § 3786.)

On the above state of facts, therefore, it cannot reasonably be said that the assignment was not in compliance with the requirements of the Uniform Stock Transfer Act, or that the *bona fides* of complainant is open to question under sections 7 and 8 of the act, Cahill's St. ch. 32, ¶¶ 235, 236. While it does not appear that the brokerage firm used the certificate for the purpose contemplated by appellant, there is nothing to indicate any notice to complainant of that fact or that he was put on inquiry with regard thereto.

It is also contended that because there was no proof of the laws of the State of Delaware under which the Fitzpatrick McElroy Company was organized, as alleged in the bill, the court could not say that the certificate in question is a "certificate" within the meaning of said act; that it was incumbent upon appellee to allege and prove the laws of the State of Delaware pertaining to corporations before it could take notice of the requirement that they be "consistent with this act." In the absence of proof as to the laws of Delaware it will be presumed that the common law prevails in that State. (*Woodbury v. United States Casualty Co.*, 284 Ill. 227; *Opp v. Pryor*, 294 Ill. 538, 541.) If, as we have already said with reference to the points under consideration, the Uniform Stock Transfer Act is a mere codification of common-law principles, then in absence of proof on the subject the laws of the State of Delaware are presumptively consistent with said act. We find nothing, therefore, in the facts or findings of the decree to which the statutory definitions referred to do not conform, and as the original defendants stand neutral in the case and ready to comply with the decree we think it should be affirmed.

*Affirmed.*

GRIDLEY and SCANLAN, JJ., concur.