In the Matter of the Estate of DENNIS L. SULLIVAN, Deceased.

Surrogate's Court, Franklin County, March 13, 1929.

——— ———, for ———.

——— ———, for ———.

LAWRENCE, S. This is a proceeding on judicial settlement. The decedent died May 4, 1928. He left no children. The widow is the administratrix. The other next of kin are brothers and sisters of the deceased and are of mature age.

Hon. George J. Moore had charge of the legal procedure to settle the estate and prepared the account for the administratrix. Schedule G of such account sets forth that at the time of the death of Dennis L. Sullivan there was a certificate of ten shares of the capital stock of the Citizens National Bank of Malone, standing in his name and also ten United States gold bonds for $1,000 each, registered in the name of the deceased and due September 15, 1928. These securities were in a safety deposit box in the Farmers National Bank of Malone. This schedule further states in substance that on May 3, 1928, the deceased gave these securities to the widow and delivered possession to her, and that she claims to own them, further stating in substance that when due the bonds were cashed and the proceeds

deposited in the interest department of the Farmers National Bank in the name of the widow to await the determination of their ownership, if such ownership should be controverted.

It is the ownership of this stock and of these bonds or their proceeds which is the subject of controversy here.

Hon. Frederick G. Paddock appeared on the return day of the citation for all of the brothers and sisters and filed objections to the account, which are confined substantially to the question of the ownership of the stock and bonds referred to. In the brief filed by him, he criticises Mr. Moore for preparing the account for the administratrix and also representing her as claimant. That does not seem serious, as the issues developed into a contest between the claimant and the other next of kin, all of whom were represented.

There was some testimony with reference to the furniture. It was to the effect that it belonged to the widow and that most of it was owned by her previous to her marriage. The deceased and the widow were married April 30, 1914. They never had any children. Previous to their marriage, the widow had occupied a six-room flat, furnished by her and in it conducted dressmaking and cleaning and repairing. For two years after the marriage the couple lived in this apartment and then moved to the home where they were living just before Mr. Sullivan died. This home was of the assessed value of from $3,500 to $4,000 and the deed to it was in the name of Mr. Sullivan. The furniture was moved to the new home. Other furniture was purchased by the widow and all was insured in her name. It appears that the decedent left property over and above the securities in question as follows: Real estate of the assessed value of from $3,500 to $4,000; personal property, after the payment of debts and expenses, of the amount of about $8,000.

Practically the only evidence regarding the ownership of the securities was furnished by Katherine Murray, niece of the widow, who resides in Massachusetts. She frequently visited the home and was there during about two weeks prior to Mr. Sullivan's death and assisted in caring for him. It is apparent that the decedent's mind was not affected by his illness. He was taken to Ogdensburg in his own automobile, accompanied by his wife, a friend and the witness mentioned. This trip was for the purpose of an operation and was taken on the day he died. This was May 4, 1928. It was on the day previous, after it had been decided that he should go to the hospital, that the alleged transactions took place which are the subject of the controversy here.

It was stipulated that decedent rented a safety deposit box in the Farmers Bank on July 10, 1920; that the keys which were presented in court were issued to him; that it was the custom of the bank,

after the owner's death, to seal the deposit box and not allow it to be opened except on the order of the court, or in the presence of a representative of the State Tax Commission; that in this case such a representative of the State Tax Commission was present when the box was opened two days after his death and the box was found to contain the securities mentioned, the stock certificate being in his name and without indorsement and the bonds being registered in his name; that the bonds were redeemed through the bank when they became due and that the proceeds, amounting to $10,212.50, were deposited in the interest department in the name of Katherine L. Sullivan; that when the bonds were redeemed the transfer was executed by Katherine L. Sullivan as administratrix, as required by the United States Treasury Department rules.

The witness Katherine Murray testified that on the afternoon of May third, while the decedent was in the sitting room of their home, she heard him direct his wife to go to his safe in the same room and get his box (apparently meaning a box in the nature of a cash drawer), which she did and carried it to him, whereupon he opened it and took two keys out of the box, stating to her, " here are my keys to the safe deposit box in the Farmers National Bank and keep the keys. I give these to you for the care you have given me." Further on adding: " I have ten thousand dollars in government bonds in the box and I have ten shares in bank stock in the Farmers Bank." Adding, " and these I want you to have." The witness further stated that she did not recall what bank the stock was issued by. She states the widow asked him what he meant, to which he replied: " I mean just what I say." The wife took the keys and put them in her pocket book. The witness further states that decedent told her he had a twenty-dollar gold piece in the box which he wanted to give her and told his wife to give her the keys and for her to go to the bank and get the gold piece, which she did, and while doing so, saw some bonds with Mr. Sullivan's name on them and a certificate for bank stock. She says she returned and delivered the keys to Mrs. Sullivan in the presence of the decedent and thereafter did not see the keys in the possession of the decedent, but did see them in the possession of Mrs. Sullivan, by whom they were taken to the bank when the safety deposit box was opened in the presence of a representative of the State Tax Commission, a day or two after Mr. Sullivan's death.

On cross-examination the witness stated various subjects of conversation during the day, with reference to arrangements for the Ogdensburg trip, insurance on car; and stated that when the box was taken to the decedent by the wife on the occasion referred to, he unlocked it with a key which he had in his pocket. The witness

again detailed the statement made by the decedent in the following language: " Q. When he got them out [referring to keys] what did he say about them? A. He gave the keys to Mrs. Sullivan and said, ' here are the keys to my safe deposit box in the Farmers Bank ' and he said ' I am giving you what is in the box for the care you have given me and keep the keys.' Q. That's all you heard, was it? A. He said there is ten thousand dollars in government bonds and ten shares in the bank stock."

The above is the substance of the testimony on which the widow bases her claim and on which the other next of kin claim there was no valid gift or transfer of the securities in question.

In dealing with the problem presented here, we must keep in mind that gifts of this character must be established by convincing proof, free from suspicion and with unmistakable intent on the part of the donor to consummate the transfer. It must be something more than an intention to make the gift. It is necessary that the delivery of the gift shall be as adequate as the nature of the property and the surrounding circumstances will permit. Where, however, the donor uses language showing a clear intent to make a gift and the circumstances show that he had done what he considered necessary to effectuate that purpose, evidence of actual delivery need not be of so definite a character, especially where the act is a natural one. There must be a surrender of dominion, but the fact that the donor has access to the place where the thing given is deposited does not invalidate the gift, providing the donee has such control over the thing given that he might remove it at any time. (*Beaver* v. *Beaver*, 117 N. Y. 421; *Gilkinson* v. *Third Ave. R. R. Co.*, 47 App. Div. 472; *Ridden* v. *Thrall*, 125 N. Y. 572; *Reynolds* v. *Reynolds*, 20 Misc. 254.)

Considering the testimony in the light of these rules, among others, I do not hesitate to find that there was an intention on the part of the donor to make the gift. He delivered to the donee the keys which were the symbol of transfer and which gave her control of the securities. He used language showing conclusively that he was surrendering possession and the acts and circumstances surrounding the gift show that it was a natural act and justified by the relationship of the parties.

It was claimed that the witness was interested and that her testimony should be disregarded or at least viewed with grave suspicion. Her testimony indicates that the donor treated her with respect and affection. There seems to be nothing to show confusion on her part as to what took place, nor does her testimony or her demeanor indicate anything improper. What took place was natural and shows a desire on the part of the donor to bestow a gift

upon a person who was the natural object of his bounty and what he did was the result of a natural and a worthy impulse.

It is claimed, however, that the bank stock could not be transferred, as no stock transfer stamps were affixed to the certificate. This proposition received attention in this court in *Matter of Shelley*, where cases upon this question were commented upon. It would seem that the duty of affixing and paying for transfer stamps is cast upon the transferor by section 270 of the Tax Law (as amd. by Laws of 1928, chap. 740). The decedent in this case did not do that and the question remains as to whether the widow should be penalized for such failure. I do not hesitate to hold that she should not be so penalized. (*Matter of Raleigh*, 75 Misc. 55; *Sheridan* v. *Tucker*, 145 App. Div. 145; *Matter of Ball*, 161 id. 79; *Hall* v. *Davis*, 95 Misc. 315; *Ambrosius* v. *Ambrosius*, 167 App. Div. 244; *Reinhard* v. *Roby Co.*, 110 Misc. 152; *Bean* v. *Flint*, 204 N. Y. 153; *Luitwieler* v. *Luitwieler P. E. Co.*, 231 id. 494; *Matter of Borst*, 129 Misc. 424; affd., 222 App. Div. 707.)

I, therefore, hold that the objections to the account should be dismissed.

Ordered accordingly.