In re Estates of Helen Antkowski, Deceased, and
Vaclov Antkowski, Deceased.
Eloise Kempski et al., Appellants, v. Maria B. Hisgen,
Administratrix, and Frederick J. Hisgen, Jr., Ap-
pellees.

Gen. No. 38,833.

Opinion filed June 29, 1936.

JACOB LEVY, of Chicago, for appellants; EDWARD McTIERNAN, of Chicago, of counsel.

PAYTON J. TUOHY, of Chicago, for certain appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

On March 15, 1926, Vaclov H. Antkowski, a resident of Cook county, Illinois, died intestate in Chicago, leaving his wife Helen his only heir at law and next of kin. She was appointed administratrix of his estate, and thereafter on June 11, 1926, she suddenly passed away intestate, leaving as her only heirs at law and next of kin, Maria B. Hisgen, her sister, Joseph P. Kwiatkowski and Leon Kwiatkowski, her brothers, Eloise Kempski, her niece, and Henry Schryer, her nephew. Maria B. Hisgen was thereupon appointed administratrix *de bonis non* of the estate of Vaclov H. Antkowski and was also duly appointed administratrix of the estate of Helen Antkowski.

Vaclov Antkowski owned at the time of his death 26 shares of stock in the Westinghouse Electric Co., 25.02 shares of the common stock of the Sinclair Oil Co. and had a savings account in the First Trust & Savings Bank of Chicago, evidenced by a bank book No. 341819 of that bank, which showed a credit on January 8, 1926, of $1,000.14. The shares of stock were evidenced by certificates issued in the name of Vaclov Antkowski, and these certificates, together with the savings bank book, passed into the possession of Helen Antkowski, administratrix, who took legal title thereto, and being the only heir at law and next of kin and no debts having been proved against the estate, she became the owner thereof. Helen Antkowski was

also the owner of 25 shares of common stock of Libby, McNeill & Libby, evidenced by a certificate issued to her in her name. These items of property are the subject matter of this litigation. The certificates of stock are not indorsed, and neither these nor the bank account have been transferred by any purported written assignment. This property is in possession of the respondent, Frederick J. Hisgen, Jr., who claims that he became the owner thereof on or about April 15, 1926, at which time, he avers, Helen Antkowski, his aunt, delivered each and all of these items of property to him, stating that she was making a gift of them to him. This proceeding was begun in the probate court when petitioners, heirs at law and next of kin caused a citation to be issued against him and the administratrix, his mother, pursuant to the provisions of sections 81 and 82 of the Administration Act (see Ill. State Bar Stats. 1935, p. 57). After hearing the evidence the probate court entered an order finding that respondent was the owner of each and all these items of property by gift from Helen Antkowski. Petitioners appealed to the circuit court of Cook county where the issue of ownership was submitted to a jury which returned a verdict in favor of respondent, and the court, overruling the motion of petitioners for a new trial, entered judgment in accordance with the verdict, which petitioners seek by this appeal to reverse.

It is contended in the first place, that respondent, Frederick J. Hisgen, Jr., failed to establish his claim by that clear and convincing proof required to establish a gift. The law is well settled that such evidence is necessary in order to establish a gift of property *inter vivos*. *First Trust & Savings Bank v. Austin,* 243 Ill. App. 386; *Rothwell v. Taylor,* 303 Ill. 226; *Bolton v. Bolton,* 306 Ill. 473. As already stated, the evidence here shows that respondent was the nephew of deceased; that he showed kindness to Mrs. Antkowski

in many ways after the death of her husband; that prior to May 1, 1926, Mrs. Antkowski lived on Argyle street, on the north side of Chicago; that about that time she moved to 6009 Rhodes avenue, the south side of Chicago, which was very near to the home of respondent, who lived with his mother, Maria Hisgen, at 5747 Michigan avenue; that respondent visited his aunt very often, and that she relied upon him in many of her matters. The evidence shows that Mrs. Antkowski kept a safety deposit box in the Ashland State Bank, but the undisputed evidence shows that this property was not in that box at the time of her death. The evidence tends to show that about May 15th, at the home of respondent's mother and in the presence of several witnesses, Mrs. Antkowski handed to respondent a package wrapped in brown paper which contained the certificates for these stocks and this bank book, and, as Maria Hisgen testifies, she at that time said, "Fred, I give you this."

Mrs. Cowan, neighbor and friend of these people, says she remembers the occasion when Mrs. Antkowski rang the Hisgen's door bell and, as they were not then at home, she then rang the door bell of witness's home, and witness invited her to come in and wait, which she did. Mrs. Cowan says that Mrs. Antkowski had a package with her and told witness that she had been very blue since she lost her husband, and that she wanted Fred Hisgen to have everything she owned; that in a short time Hisgen and his mother returned and Mrs. Antkowski went to their apartment, the witness following her; that when she came in, Mrs. Hisgen, Fred Hisgen and Maria Hisgen were there, sitting at the kitchen table, drinking coffee; that Mrs. Antkowski handed Fred a package and said, "I want you to have this," and she said, "Yes, I give this to you." The witness says there were some papers in the bundle which looked like mortgages, or something. She says

that she talked with Mrs. Antkowski two weeks before this time and she then told witness she wanted her nephew Fred to have everything she had, so that he would look after his mother and his sister. She says Mrs. Antkowski talked often with her; that she heard Mrs. Antkowski repeatedly say she wanted Fred to have everything she had. The witness admits that she is very friendly with the Hisgens. She thinks that on the occasion in question she stayed in Hisgen's apartment about a half hour. Asked to give the exact words Mrs. Antkowski used, the witness replied, "She said, 'Fred, I want you to have this'"; that Fred then opened the package, which was about eight inches long and four, five or six inches wide, wrapped in brown paper, and a bank book fell out; that he looked at it, and Mrs. Antkowski said, "Fred, these are yours."

Marie Hisgen testified that she was present when her Aunt Helen handed her brother a package and said, "Fred, I give you this, and I want you to take care of your little sister and your mother." She says that Fred opened the package; that she watched him and remembers there were certificates of stocks and a bank book in it; she describes in detail the particular shares of stock; she says the parties present stayed in the kitchen quite awhile and then had dinner; that her brother took the package and went out of the room; she also says that her aunt said to her brother prior to this time, "I want you to have everything."

James Poling, who had been a specialist in the purchase of oil station sites for the Standard Oil Co. and at the time of testifying was an assistant to the Director of Finance at Springfield, says that in May, 1926, he was checking real estate at 47th street and Whipple avenue and found the property was owned by Vaclov Antkowski, who lived on Argyle street; that he wrote a letter to him and found that he had died and the wife lived at 60th and Rhodes avenue; that he called there

and talked with Mrs. Antkowski about the middle or third week of May, 1926; that he asked her if the 47th street property was for sale and she told him that she no longer owned that piece of property and that she had given all her property to Fred Hisgen, her nephew, who lived on Michigan boulevard near 58th street; that the witness did not know Fred Hisgen at that time and had no transactions either with him or with Mrs. Helen Antkowski.

Petitioners undertake to discredit all this evidence by pointing out circumstances which it is claimed render it improbable, and proved facts inconsistent therewith. As to Poling's testimony, it is pointed out that the uncontradicted evidence is that Helen Antkowski had not given her real estate to respondent but, on the contrary, held the title thereto until she died, after which it was partitioned by the heirs. They point out that Poling's evidence, as well as other evidence, is in the nature of oral admissions, which are to be received with caution, and, moreover, that the statements related by Poling are not inconsistent with the theory that decedent gave the property to respondent, not as owner but as her agent. They also make much of the fact that for years respondent made no effort to secure a conveyance of the stock certificates upon the books of the respective corporations, or to have the account represented by the bank book transferred into his own name. When asked upon examination why he had not presented the account book to the bank, respondent said, "I did not because I have no authority"; that he intended to do this when he should have "lawful possession." Petitioners also point out inconsistencies and contradictions in the testimony of the witnesses as to the order of events and circumstances at the time of the alleged gift of the property to respondent. Petitioners say that the testimony of Mrs. Cowan does not sufficiently identify the particular

items of property. This last observation is correct, but respondent did not attempt to prove his case by only one witness. The identification of the items is made quite sufficient by the testimony of other witnesses. Respondent is criticized for not calling the administratrix as a witness, but he was not under obligation to do so, and in her report to the probate court she expressed her belief that a valid gift of this property was made to respondent.

It is urged that the application for letters of administration is inconsistent with the fact of a gift because it stated that the personal property in the estate amounted to "not more" than $5,000. We do not think this suggestion is entitled to much weight. Clearly, it would become necessary for the administratrix to show in her inventory and final account these items of property, as respondent's title would be derived from the administratrix. While some of the observations of petitioners are not without merit, they cannot prevail in face of the fact that two judges and a jury have passed upon the weight of the evidence and held it to be sufficiently clear and convincing. Two of the witnesses were without any financial interest. It is true that respondent's apparent lack of interest in the gift and the want of expression of appreciation of it seem quite unusual, but this and some other matters argued by petitioners tend to show an absence of fabrication. It is true that the absence of an assignment of the account and lack of indorsements of the certificates indicate carelessness, but the books are full of cases in which persons under similar circumstances have transferred securities in the same way.

Summarizing the uncontradicted evidence, it is to the effect that Helen Antkowski desired respondent to have her property; that he was naturally the one to whom by reason of interest and affection she would desire to give it; that several weeks prior to her death, evidently not anticipating immediate death, this prop-

erty was delivered by her to respondent; that unimpeached witnesses heard her say when delivering it to him that she was making a gift of it to respondent. In view of this uncontradicted evidence and in view of the verdict of the jury who saw and heard the witnesses, we cannot, in the absence of some positive rule of law compelling a contrary conclusion, hold that the gift was not valid and complete.

Petitioners, however, further contend that the claim to the deposit money in the savings bank was a chose in action, which was not, as a matter of law, transferred to the donee. The bank book, say petitioners, was not the subject matter of the gift; it was only a symbol of the thing it represented. They quote 28 Corp. Jur. 665. They argue that to make possible a symbolical delivery of the gift, the savings bank book should show the name of the donor and show the deposits in her name; that this bank book did not show this; that decedent's name did not appear on the pass book nor on the books of the bank because her claim to the deposit originated by reason of the fact that her husband had made the deposit, and her interest arose out of the fact that she was his widow and sole surviving heir. They say:

"In other words, her claim was an intangible right. It was a chose in action of such a character that a manual delivery of same could not be made. Accordingly, in order to effectuate a gift under the law, *it was necessary to execute a written assignment of that parol chose of action.* This was not done."

The cases are to the effect that delivery of the subject matter of a gift is essential to passing title, and where the nature of the thing given is such that it is not capable of actual delivery, there must be some equivalent by way of a symbolical delivery. Delivery is essential to every gift. It follows that where the nature of the thing is such that there can be neither actual nor symbolical delivery, it is impossible to make

a gift of that thing without a written assignment. It was for this reason in *Wachsmuth v. Penn Mut. Life Ins. Co.,* 147 Ill. App. 510, where a father said to his sons, who were indebted to him, that he had canceled the debt and that he would give it to them, the words were held ineffectual to create a gift *inter vivos.* For the same reason in *Berry v. Berry,* 238 Ill. App. 507, where a son borrowed from his father, orally agreeing to repay, it was held that this indebtedness could not form the subject matter of a merely verbal gift, but that some writing was indispensable. So also in *Wilson v. Keller,* 9 Ill. App. 347, where there was an alleged verbal gift of a claim due from the donee to the alleged donor for medical services, it was held that the indebtedness could not be made the subject of a verbal gift, and that the promise of the alleged donor was *nudum pactum.*

The attempted gift of a savings account by transferring to the donee the book of account containing the contract between the bank and the depositor concerning the account with the bank is distinguishable from these cases, for the reason that the subject matter of the gift in the case of the gift of a savings account is symbolically represented by a written contract, which is not an intangible but a tangible thing, capable of actual, manual delivery. While there is no case in Illinois, so far as we are informed, so holding precisely, the weight of authority is to the effect that a gift of such deposit may be made by delivering the deposit book, together with the proof of verbal expression by the donor of his intention to make a gift of the account.

Petitioners cite 28 Corp. Jur. 665, sec. 65-C, but quote only a part of the paragraph. The portion omitted states, in substance, that the law is that no written assignment of the deposit book is necessary. Petitioners cite *Pierce v. Boston Five Cents Sav. Bank,* 129

Mass. 425, 37 Am. Rep. 371, 40 A. L. R. 1251, but the portion of the opinion quoted does not accurately state the substance of the decision, which is to the effect that a valid gift is made by delivery of the deposit book with an oral expression of intention to make a gift, which is accepted by the donee. The weight of authority is to the same effect. See Annotation to *Snidow v. Brotherton,* 140 Va. 187, 124 S. E. 182, 40 A. L. R. 1249–63. Almost innumerable cases from different States so hold. *Dellepiane v. Hynes,* 83 Cal. App. 604, 257 Pac. 180; *In re Lunt's Estate,* 262 N. Y. S. 86; *In re White's Estate,* 266 N. Y. S. 765; *In re Knight v. Mears,* 156 Va. 676, 159 S. E. 119; *State Savings Bank v. Baker,* 257 Mich. 666. In analogous cases the courts of Illinois have so held, as in *Rinard v. Lasley,* 143 Ill. App. 450; *Merrill v. Merrill,* 187 Ill. App. 589, where certificates of deposit were the subject matter of the gift; *Poirot v. Gundlach,* 284 Ill. App. 349, where the alleged gift was a memorandum of indebtedness; *Martin v. Martin,* 174 Ill. 371; *Rothwell v. Taylor,* 303 Ill. 226, where the subject matter of the gifts were negotiable instruments.

We hold that the subject matter of the gift as to this savings bank account was not intangible, and that there was an actual delivery of the book with verbal expression of intention to make a gift sufficient to pass the title.

Petitioners next contend that the title to the shares of stock did not pass because the certificates were not transferred on the books of the several corporations in conformity with the provisions of the Uniform Stock Transfer Act (Ill. State Bar Stats. 1935, p. 901). This point is presented by petitioners for the first time in this court. The cause was not tried by petitioners upon this theory, and respondent argues that petitioners cannot now be permitted to urge that theory here for the first time. Respondent cites *Wollenberger v.*

*Hoover,* 346 Ill. 511; *Roof v. Rule,* 348 Ill. 370, and *Morrison v. Laverty,* 205 Ill. App. 549. The cases are not in point. In the trial court petitioners at all times took the position that the title to the property had never been in fact transferred to respondent. They are not now precluded from urging any theory consistent with that position. The point presents a question of law whether under the statute the right of property in the certificates of stock passed to respondent. Respondent relies on sections 1 and 9 of the act (assuming the statute to be applicable, which he does not concede). Section 1 provides that title to certificates and the shares represented thereby can be transferred *only* in the manner indicated in the several sections of the act. Section 9 provides, in substance, that the delivery of a certificate by a person appearing by the certificate to be the owner thereof, without the indorsement requisite for the transfer of the certificate and shares but with intent to transfer, shall in the absence of an agreement to the contrary, impose upon the person so delivering an obligation to complete the transfer by making the necessary indorsement, and that the transfer should take effect as of the time when the endorsement is actually made. Professor Mechem, discussing the Uniform Act in Illinois Law Review, vol. 20, pp. 9 to 30, expresses the opinion that sections 1 and 9 construed together would appear to provide that "the delivery of a certificate, unendorsed, would be effectual to pass an equitable title, enforcible by the donee," and says, "That such a conclusion is correct has been held or intimated in at least two cases." He cites *Herbert v. Simson,* 220 Mass. 480, 108 N. E. 65, and *Reinhard v. Roby Co.,* 110 Misc. Rep. 152, 179 N. Y. S. 781, both of which involved the validity of a gift of stock certificates.

In Fletcher Cyclopedia Corporations, vol. 12, sec. 5684, the author states:

"According to the weight of authority, a transfer of the stock to the donee on the corporate books is not essential to a valid gift *as between the parties, and hence, as between them,* the fact that it remains in the name of the donor on the books does not defeat the gift nor affect the title of the donee, *nor has the Uniform Stock Transfer Act made any change in this rule.* But there is some authority to the effect that a transfer on the books is essential to a delivery." In support of the statement is cited *In re Connell's Estate,* 282 Pa. 555, 128 Atl. 503, 38 A. L. R. 1362. After stating the general rule in that State is well settled, that a valid gift of nonnegotiable securities might be made by delivery to the donee without assignment or indorsement in writing, the opinion goes on to state that the rights of the parties as between themselves have not been affected by the provisions of the Uniform Stock Transfer Act, which had been adopted in that State. It held that the object of the statute was merely to regulate the mode of transfer upon the books of the corporation and to furnish a rule for deciding between claimants contesting over the ownership of the stock, and that the provision was inserted for the protection of the corporation in the payment of dividends or otherwise, but was not intended to control the rights of the parties in matters as between themselves.

There is *obiter* to the contrary in *Parker v. Colonial Bldg. Loan Ass'n,* 111 N. J. Eq. 49, 161 Atl. 353. That decision is by the chancery court of New Jersey, and the courts of that State, contrary to the weight of authority, have held that the mere delivery of certificates of stock without a writing is ineffectual to pass title. The courts of Louisiana, Oklahoma and Colorado hold likewise and irrespective of the Uniform Stock Transfer Act. See 20 Ill. Law Review, p. 17. We think the Pennsylvania court in *In re Connell's Estate* correctly held that the rights of parties as be-

tween themselves are not affected by the provisions of the Uniform Stock Transfer Act, and that it was not the intention of the legislature to change the rule of law applicable as between the immediate parties to the transaction. This construction of the act is in harmony with *Patterson v. Fitzpatrick McElroy Co.,* 247 Ill. App. 81.

The brief of petitioners presents as a separate point that delay by respondent in asserting his claim to the gift operates against it and cites *Eichin v. Eichin,* 244 Ill. App. 89, and *First Trust & Savings Bank v. Austin,* 243 Ill. App. 386. The fact of delay has been already considered with respect to the point concerning the weight of the evidence. It is entitled to weight but is not controlling.

Petitioners also argue that the decedent could not make a gift because it was impossible for her to vest the title in the donee, since the subject matter of the gift was property of her husband's estate, of which she was the administratrix. While in one sense, technically, the title was in her as administratrix, there was, so far as the evidence discloses, no debts against the estate, and she held the title for herself. It was to all intents and purposes her own, and she had possession and had the power to make a gift if she chose to do so. She was the administratrix. She was the sole heir. She was the owner in possession and could make a gift of her property if she willed to do so.

The judgment of the trial court is affirmed.

*Affirmed.*

O'CONNOR and McSURELY, JJ., concur.