### SNOOK v. BLANK et al.
### Civ. A. No. 528.

United States District Court
D. Montana, Billings Division.

Oct. 28, 1948.

Sterling M. Wood, Robert E. Cooke, and Fredric Moulton, all of Billings, Mont. (firm name Wood, Cooke & Moulton, Billings, Mont.), for plaintiff.

John B. Tansil, Franklin A. Lamb, and Andrew G. Sutton, all of Billings, Mont. (firm name Tansil & Lamb), for defendants.

PRAY, Chief Judge.

The above entitled cause was tried to the court without a jury. It is an action to quiet title to the motion picture rights of the book entitled "The American Cowboy", which was written and copyrighted by Will James. It is admitted that the situs of these rights, which are claimed by both parties to the action, is in Yellowstone County, Montana. Many months of delay occurred between the filing of plaintiff's brief on September 29, 1946, and the filing of defendant's brief principally because of the serious and long continued illness of the chief counsel for defendant. No extensions of time had been sought and all time had long since expired, but on a showing by associate counsel for defendant of excusable neglect, and without objection by counsel for plaintiff, the court allowed the filing of defendant's brief on the 6th day of February, 1948, and gave plaintiff until April 1, 1948, for reply brief, which was filed in due time. A further delay occurred in taking up this case for decision, occasioned by the death of Federal Judge R. Lewis Brown, and requiring the absence of the presiding Judge in other divisions of the District.

The court has endeavored carefully to weigh the evidence and to determine the value thereof under the rules. Will James died in California September 3, 1942, leaving a will which was filed for probate in the State District Court of Yellowstone County, Montana. M. J. Lamb was appointed and acted as executor, as provided by the will. An inventory and appraisement was filed in the estate November 5, 1942, and among the assets of the estate was listed therein: "Motion picture rights to The American Cowboy, $2500." Thereafter the executor sold these motion picture rights to the plaintiff herein for $2500 which sum was paid by plaintiff Snook to the executor, and a bill of sale issued. This sale was confirmed by the court in regular proceedings therefor. The evidence shows that defendant was employed by Will James as his secretary at $100 per week and her board and room. On December 24, 1942, defendant filed her claim in the estate in the sum of $11,414.27 for: "Regular secretarial duties and collaboration in writing books, including 'The American Cowboy', from June 26, 1940, to September 3, 1942 (date of death of deceased) for which I was not paid and of which the reasonable value was $70 per week, for 114 weeks and 1 day, or $7,990. Service as houskeeper and practical nurse, 24-hour duty from June 26, 1940, to September 3, 1942, reasonable value of services rendered $30 per week, 114 weeks and 1 day at $30 or $3,424.27. Total $11,414.27." This claim was disapproved by the executor, and defendant on March 6, 1943, brought suit on the claim in the State District Court at Billings, Montana, against M. J. Lamb, as executor. On March 29, 1943, this action was tried before a jury and a verdict was returned in favor of Lillian Blank, the defendant herein, for $3,196,

520

and the judgment on the verdict was satisfied June 5, 1944.

Defendant claims an oral gift from Will James of movie rights to The American Cowboy; she has produced nothing in writing from him. There seems to be no doubt that defendant knew the motion picture rights to the book in question were listed as an asset of the estate; she claims to have collaborated with Will James in writing the book, and charged for doing so in the claim she filed against his estate, for which she received compensation. From the filing of that claim to the end of the law suit, and by reason of her presence in Billings, represented by counsel, she could have learned about the James estate in detail, and could have had ample opportunity to assert her alleged ownership of the moving picture rights. Counsel stated that the first notice of a legal nature of her claim to the above rights, which were conveyed to plaintiff, by the executor, was in the present case. (Tr. 196–197.)

■ Defendant produced her affidavit filed in the copyright office, after the death of Will James, in which she claimed a conveyance to her by Will James of all his rights to the book in question, which if admissible in evidence, would have been insufficient under the provisions of the copyright law. The court is of the opinion that the objection of counsel to the admission of this affidavit as a self-serving declaration should be sustained.

■ The claims of the defendant on the different dates in which she asserts that Will James gave her the moving picture rights to the book, and the attendant circumstances, have been carefully considered by the court and without being able to find wherein a valid transfer has ever been made of the moving picture rights to this book, except that of the sale above described to the plaintiff herein. Counsel contend that the gift of the manuscript was at most a gift of the material object copyrighted, and cites Section 41 of the Copyright Act, 35 Stat. 1084, 17 U.S.C.A. § 41, showing that the copyright is distinct from the property in the material object copyrighted, and the sale or conveyance by gift or otherwise of the material object shall not of itself con-

stitute a transfer of the copyright. Section 42, now Section 28 of the new Act, Title 17 U.S.C.A. of the above Act, reads as follows: "Copyright secured under this title or previous copyright laws of the United States may be assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the copyright, or may be bequeathed by will." The testimony of the defendant and the depositions of her witnesses relate to statements alleged to have been made shortly before the death of Mr. James. While such statements are admissible in evidence, 10514, R.C.Mont. 1935, they should be received and weighed with caution. One eminent authority on evidence has said in effect that there is general distrust of testimony relating any extrajudicial statements alleged to have been made, including a party's admission. Wigmore on Evidence, Sections 1056 and 1057. The Supreme Court of Montana, speaking generally on this character of evidence, held it to be the weakest and least satisfactory of any in persuasive value. Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 P. 458, Ann.Cas.1914B, 468. It has been held that a gift is "a transfer of personal property, made voluntarily, and without consideration", and that one of the necessary essentials of a valid gift is a complete divestment of control by the donor. Jones v. Bank of San Jose et al., 82 Cal. App. 696, 256 P. 247; Lefrooth v. Prentice et al., 202 Cal. 215, 259 P. 947. It would seem that Mr. James did not surrender dominion and control over the publication of his book when his contract of November, 1941, with Scribner is considered, and the royalties received from that source; nor to movie rights over which he had control as evidenced by his contract with Mr. Morrison, which would not expire under its terms until September 5, 1942. Defendant knew about this contract, in fact, she said that she "had him sign it", meaning Mr. James. The Scribner contract recited that James was the sole author and proprietor of the book; if the Morrison contract had been introduced in evidence, it might have been found to contain a like declaration in respect to the movie rights. As the court understands the facts, it would seem that

whatever gifts to the defendant Mr. James may have had in mind were incomplete and were revoked by his death. It has been held that where the nature of the proposed gift is such that there can be neither actual nor symbolical delivery, that it is impossible to make a gift of that kind without written evidence. In re Antkowskis' Estate (Kempski et al. v. Hisgen), 286 Ill.App. 184, 3 N.E.2d 132; In re Meyer's Estate, 317 Ill. App. 96, 45 N.E.2d 495; 38 Cor.Jur. Sec. Par. 45, p. 823. Counsel's contention that the copyright and movie rights were rights of literary property incapable of manual delivery would seem to have been sustained in the authorities cited. In other words, a written instrument was necessary.

But defendant has produced no writing to support her alleged gift; there appears to have been no reason why such a writing could not have been obtained if it were Mr. James' intention to favor the defendant as set forth in her answer. Lo Presti v. Manning, 125 Cal.App. 442, 13 P.2d 1002; Cohan v. Commissioner of Int. Rev., 2 Cir., 39 F.2d 540; Adams v. Merced Stone Co., 176 Cal. 415, 178 P. 498, 3 A.L.R. 928.

 The court has given careful attention to the able brief submitted by counsel for defendant, but cannot agree with counsel that defendant was a co-author with Mr. James, or that the book was copyrighted by him in trust for the defendant as the real owner thereof. Defendant wrote the plaintiff on August 25, 1942, a few days before the death of Will James, that she believed "his new book the American Cowboy is getting to be very popular, and if he wait long enough I think he will sell it at a big price." No claim of interest in the book or appurtenant rights is found here. The contracts with Scribner and Morrison show complete control in Mr. James up to the time of his death. And furthermore, defendant never filed any claim for the Scribner royalties which were inventoried and appraised in the James estate. According to authorities cited a "preconcerted common design" is an essential element of proof to establish co-authorship between the parties, and the testimony of the defendant fails to disclose this necessary prerequisite. As to the gifts claimed by defendant, whether made inter vivos or causa mortis, under the state of facts here, the weight of authority would seem to indicate that such gifts would have to be held invalid.

An important feature of this case relates to the inventory and appraisement, which was filed in court before defendant's claim, and the defendant's apparent lack of interest in it and lack of knowledge of its contents, and yet in filing her claim against the estate and coming to Billings to collect it her first concern naturally would be to examine the files of the estate, with her attorney, and especially the inventory and appraisement to determine as nearly as possible the size and value of the estate and weigh the probabilities of recovery in the event she should commence suit and should be successful in obtaining a judgment on her claim. Thus, in coming in personal contact with the estate, with the assistance of her counsel, who would have to prepare her case for trial after rejection of her claim by the executor, she could hardly help knowing that the moving picture rights to the book in question were set down in the inventory and appraisement as an asset of the estate and valued at the sum of $2500. If she owned the book, the copyright, and the moving picture rights, as she afterwards asserted, how can she explain her failure to file a claim for them with the executor and protest their inclusion as an asset of the estate, or fail to assert a claim to the Scribner royalties included in the inventory? This is one of the inconsistencies in her case which the court has had difficulty in resolving. The testimony of her witnesses given by deposition in which so much zeal is displayed in several instances in submitting matter wholly unresponsive to the questions propounded is not calculated to inspire confidence. The court is also at a disadvantage in passing upon the credibility and weight of such testimony in being deprived of the opportunity of seeing the witnesses and hearing them testify. In this instance the size of her claim and the language employed in its composition would seem to warrant the interpretation that every possible demand she could assert against Will James or his

estate was included therein, and would appear to preclude the idea that she could have had in contemplation any claim for moving picture rights which were then clearly before her as an asset of the estate, and which could be seen, read and fully explained to her by her counsel. Defendant's claim exceeded the sum of $11,000, and included collaboration in writing the book and made no reference to the claim later asserted that Mr. James had given her the book, the copyright and picture rights, which it would seem should have had some bearing on the size of her demand against the James estate.

■ This is an equity suit, and the court in the exercise of its best judgment must base its decision upon evidence that appears to be clear and convincing under the applicable rules of law. After considering the pleadings, evidence and arguments of counsel the court is now of the opinion that the decision herein should be in favor of the plaintiff, with costs, and it is so ordered. Findings and conclusions will next be considered, followed by the decree. Exceptions are allowed counsel.