## PENNER v. Y.M.C.A.
No. 60-L-3369.

Circuit Court, Dade County.

June 8, 1962.

Guilmartin & Schneiderman, Miami, for plaintiff.

Scott, McCarthy, Preston & Steel, Miami, for defendant.

JOE EATON, Circuit Judge.

The court, having heard the testimony in this cause, having considered arguments of counsel, and having considered the briefs filed in the cause, finds as follows —

Edward S. Christiansen pledged $10,000 to the Y.M.C.A. He owned a block of stock in Pearce-Simpson, Inc., (hereafter referred to as "the company"), which the company wished to acquire.

At the time, purchasers for the company's stock were not easy to find. Christiansen, the Y.M.C.A. and the company (through its president, William S. Simpson), worked out an arrangement pursuant to which Christiansen transferred his stock to the Y.M.C.A. as security for his contribution; the Y.M.C.A. agreed

to deliver the stock in twenty equal installments to the company, and to credit Christiansen's account with the amount received for each block. The company agreed to take each installment of stock and pay $500 for it.

Christiansen entered into the transaction for the purpose of gradually satisfying his obligation to the Y.M.C.A.; the Y.M.C.A. entered into the transaction for the purpose of converting Christiansen's contribution into cash; and the company entered into it for the purpose of acquiring the stock by installment payments. None of the parties intended that the Y.M.C.A. should have the right to transfer the stock except under the arrangement made by the parties.

For a while the parties performed the contract as contemplated. Christiansen delivered all the stock to the Y.M.C.A.; the Y.M.C.A. delivered the blocks of stock to the company; the company paid $500 to the Y.M.C.A. for each block; and the Y.M.C.A. credited Christiansen's account with $500 on receipt of the money from the company.

Then by agreement between the Y.M.C.A. and the company, Clifford S. Penner, secretary-treasurer of the company, was substituted for the company in the arrangement. Those parties continued performance as before with Penner playing the role formerly played by the company.

By the time $6,000 worth of the transaction had been completed, the stock had acquired value in the market. The Y.M.C.A. then informed Penner that it would not deliver any more shares of the stock to Penner unless he would pay the going market price, advising him that it would sell the shares in the open market if he refused to go along with the new arrangement. Penner refused. The Y.M.C.A. then offered the shares in the open market and continued in its refusal to deliver to Penner the installment of stock then due him under the contract.

Penner brought his complaint against the Y.M.C.A., and on his petition this court enjoined the sale of the shares in the open market. Afterward the court dissolved the injunction and transferred the case to the law side of the court.

The Y.M.C.A. sold the shares on the open market and moved for assessment of damages on the injunction bond.

The court finds that a binding contract existed between Penner and the Y.M.C.A. The Y.M.C.A. breached this contract when it missed delivery on an installment, announced to Penner that it

would no longer honor the agreement, and offered the shares for sale in the open market. The court further finds that the Y.M.C.A. owes Penner damages for its breach of the contract.

Ordinarily Penner's damages against the Y.M.C.A. would be assessed as the difference between the contract price and the price on the dates delivery of the shares became due. But rules for the measurement of damages for breach of contract are "merely guides in the estimation of damages . . ." 5 Corbin on Contracts, §992, p. 5. The difference between the contract price and the price on the date delivery of the shares became due would not measure the damages fairly here. The evidence does not show that Penner intended to sell the shares which he acquired. It is clear that he wanted them for the purpose of increasing his power in the internal management of the corporation.

The court finds that the most apt substitute for the performance intended by the parties is the profit made by the Y.M.C.A. on sale of the shares. An award in damages should provide "compensation in money as a substitute for the promised performance." McFerran v. Heroux, 269 P.2d 815, 821. ". . . A measure of damages which would compel defendants to pay over the difference between the contract price and the resale price is just and equitable. If the defendants have been unjustly enriched by reason of their wrongdoing, they should not be permitted to profit thereby . . ." Murphy v. Lischitz, 59 N.Y.S.2d 439,441.

Mr. Justice Cardozo expressed the principle thusly in Triangle Waist Co., Inc., v. Todd, 223 N.Y. 27, 119 N.E. 85, 86 — "If one agrees to sell something to another, and then, the next day, sells it to someone else at an advance, the new transaction is not to be ignored in estimating the buyer's loss." The Y.M.C.A. obtained $19,125 for the shares in the open market; the shares represented a contribution of $4,000 to the Y.M.C.A. Therefore, the Y.M.C.A.'s profits were $15,125. Penner's damages are therefore in that amount.

The overall result reached thereby is as follows —

The Y.M.C.A. has converted Christiansen's contribution into cash; Penner, who "winds up" without the 4,000 shares which the parties intended that he or his predecessor in interest would acquire, receives $15,125 as a substitute for the stock which the Y.M.C.A. diverted from him in breach of contract. Incidentally, Christiansen's pledge is satisfied.

The award of interest is discretionary with the court in special circumstances (18 Fla. Jur. p. 359). Special circumstances exist

here for not awarding interest. Penner took the position in these proceedings that he wanted the stock for the purpose of increasing his voting power in the corporation; the amount awarded will more than enable him to acquire 4,000 shares in the market place and thereby to achieve his objective.

The Y.M.C.A. is not entitled to recover against Penner on the injunction bond. The injunction was not wrongfully issued. An injunction is not wrongfully issued unless the court dissolves the injunction on the merits and not on mere procedural grounds. Sewell v. Huffstetler, 83 Fla. 629, 93 So. 162; National Surety Co. v. Willys-Overland, Inc., 103 Fla. 738, 138 So. 24. Furthermore, a person restrained from doing what he had no legal right to do has no right of action for damages on an injunction bond, even though the injunction may have been wrongfully issued. 32 C.J. p. 436. Whether or not the injunction was wrongfully issued depends upon whether or not the Y.M.C.A. had the legal right to sell the stock. The answer is that it did not.

The Y.M.C.A. itself recognized it had a limited right in the stock by insisting on crediting Christiansen's account only as cash came in in payment for the stock and by not crediting Christiansen's account when Christiansen delivered the shares. Even if the Y.M.C.A. had not held the stock as mere security for Christiansen's contribution, the court could not find on the evidence in this record that the Y.M.C.A. had the right to sell the stock pending physical delivery. In Florida a contract to deliver stock presumptively places title in the buyer even though the seller retains physical possession of the stock certificates. Polk-Highlands Land Co. v. Isaacs, 121 So. 465. The Y.M.C.A. fell far short of producing evidence to overcome the presumption mentioned in Polk-Highlands.

The court is aware of the provisions of the Uniform Stock Transfer Act (F.S. §§614-01-.24) but concludes that it does not control the rights of contracting parties "as between themselves." (In re Antowski's Estate, 3 N.E.2d 132, 137).

The court dissolved the injunction in this case solely because the court found that the shares of stock were not unique and therefore that Penner's recourse against the Y.M.C.A. for sale of the stock and failure to deliver stock in breach of contract lay at law in damages.

On the basis of the above, the motion of the Y.M.C.A. for damages on the injunction bond is hereby denied. Judgment shall

enter for plaintiff Clifford Penner and against the Y.M.C.A. in the amount of $15,125, and costs.