[Civ. Nos. 3665, 3666.  First Appellate District, Division One.—April
21, 1921.]

IRVINE T. O'SHEA, Appellant, v. MARGARET SICOTTE
et al., Respondents.

[1] GIFT CAUSA MORTIS—GENERAL POWER OF ATTORNEY—BANK DE-
POSITS—UNCOMPLETED GIFT.—A power of attorney given by a
stepmother to her stepson immediately prior to her death which,
in addition to those general clauses usual in such documents, also
contained a clause reciting that it was the express wish of the
stepmother that if her present illness should prove fatal she de-
sired that her stepson should take charge of all her estate, was
ineffectual to complete a . gift causa mortis of moneys in banks
belonging to the stepmother, where the power was never executed
to the extent of placing the funds within the stepson's custody
or control, and where, even if it had been executed, it would not
have removed the moneys beyond the dominion of the alleged
donor.

APPEALS from judgments of the Superior Court of the
City and County of San Francisco. Daniel C. Deasy,
Judge. Affirmed.

The facts are stated in the opinion of the court.

J. L. Taugher for Appellant.

Andrew F. Burke and Paul A. McCarthy for Respond-
ents.

RICHARDS, J.—The actions in which these two appeals
were taken were by stipulation of the parties tried and sub-
mitted upon the same evidence, and the determinative prin-
ciples of law applicable to each are the same.  The facts are
also substantially similar and are as follows: Mrs. Helen
O'Shea was the stepmother of the plaintiff and appellant,
Irvine T. O'Shea.  She was an elderly woman and was pos-
sessed of the sum approximately of twenty thousand dollars,
which she had derived from a settlement with her step-
children as to her interest in the estate of her deceased

1.  Gift causa mortis of money on deposit in savings bank, notes,
23 Am. Rep. 451; 26 Am. Rep. 684; 48 Am. Rep. 506.

husband, Jeremiah O'Shea. This money she had been keep-ing on deposit.in her own name in two San Francisco banks —the Mission Savings Bank, where she had on deposit five thousand dollars of said sum, and the San Francisco Savings & Loan Society, where she had on deposit fifteen thousand dollars of said sum. On November 16, 1917, Mrs. O'Shea, while at the home of the appellant herein, had an acute at-tack of illness which rendered her unconscious, and while in said unconscious condition she was removed to St. Luke's Hospital, where she died three days later. On the morning of November 17, 1917, she had so far recovered conscious-ness as to be able to talk briefly with one of her attendant physicians, and also a little later with the appellant herein. The physician at this first interview advised her that her condition was serious and that she ought to have her affairs fixed up, and that it would be advisable for her to execute a power of attorney "so that someone would attend to things" while she was sick. A short while thereafter the in-terview between herself and appellant occurred which is relied upon by him as forming the basis of the gift *causa mortis* to himself of the money on deposit in the two above-named banks. The words of said conversation touching said matter, as testified to by appellant, are as follows: Mrs. O'Shea said to him: "In case anything happens to me I want you to have everything I have got. Now you had better go and get someone to fix the affairs so that you can get the money out of the bank so that you will have it in case anything happens to me." Thereupon the appellant went out and telephoned to a notary public to come out to the hospital, where, as he stated to him, his stepmother wanted some papers drawn up. When the notary arrived at the hospital he was taken to the room of Mrs. O'Shea and, after a brief conversation with her, proceeded to another room, where he drew up a general power of attorney con-stituting appellant Mrs. O'Shea's general agent. This power of attorney, in addition to those general clauses usual in such documents, also contained the following clause: "In addition it is my express wish that if my present ill-ness should prove fatal I desire that the said Irvine Thomas O'Shea take charge of all of my estate." When the notary had drawn up this power of attorney he returned to the room where Mrs. O'Shea was and she signed the same. At

the time she did so the notary, according to his testimony, said to her: "If you turn it [the power of attorney] over to Irvine O'Shea you are giving him entire charge of everything and you are practically turning your property over to him." One of her physicians present at this time testified that the notary explained to Mrs. O'Shea that the document was a "power of attorney giving Irvine O'Shea the power to take charge of her business while she was sick." The power of attorney when thus executed was turned over to the appellant, who went that afternoon to the Mission Savings Bank, arriving about closing time, and not having with him the pass-book of Mrs. O'Shea, he asked the cashier to transfer the account of Mrs. O'Shea to him, exhibiting at the same time the power of attorney. The bank cashier declined to make the transfer of the account until he had consulted with Judge Matt I. Sullivan, who was the bank's attorney and was also the appellant's attorney, and advised the appellant to see him about the matter. The appellant saw Judge Sullivan that afternoon and exhibited to him the power of attorney, explaining the circumstances under which it had been made, and was advised by him that Mrs. O'Shea should make a will. Thereupon the appellant returned to the hospital, according to his story, and spoke to Mrs. O'Shea about making a will, and she consented to do so, whereupon he returned to Judge Sullivan's office, coming back to the hospital a little later with an assistant in said office for the purpose of having a will prepared for execution by Mrs. O'Shea. She was found to be in a semi-conscious condition, apparently unable to make a will, and she remained in that condition until the Monday following, when another vain effort was made to have her make a will. In the meantime, and shortly before she died, the appellant went again to the Mission Savings Bank and requested its cashier to pay over to him the money in Mrs. O'Shea's account there, which the cashier refused to do. No demand or request for the money on deposit in the San Francisco Savings & Loan Society was made by the appellant during Mrs. O'Shea's lifetime, nor, in fact, until about two months after her death, which occurred on the Monday following her attack of illness. Upon the death of Mrs. O'Shea a will executed by her about a year prior to her death was admitted to probate. By its

terms her entire estate was bequeathed to her sister, Mrs. Margaret Sicotte, and her children. These two actions were commenced by the plaintiff and appellant herein against these beneficiaries under said former will and against the bank having on deposit the sums of money to which these suits respectively refer.

[1] The contention of the plaintiff in each case before the trial court and upon this appeal is that a completed gift *causa mortis* in his favor was made by Mrs. O'Shea by the transaction above detailed. We are unable to agree with this contention. The law does not regard gifts *causa mortis* with favor because of the opportunity they afford for fraud and perjury. (*Drew* v. *Hagerty,* 81 Me. 231, [10 Am. St. Rep. 255, 3 L. R. A. 230, 17 Atl. 63].) The supreme court of this state thus states the well-established rule upon this subject: ''Gifts *causa mortis* are not regarded in the law with favor since they are in contravention of the general rules for the testamentary disposition of property, and therefore should in all cases be established by clear and convincing proof of the requisites of such a gift. (*Knight* v. *Tripp,* 121 Cal. 674, [54 Pac. 267] ; *Denigan* v. *Hibernia Sav. & Loan Soc.,* 127 Cal. 137, [59 Pac. 389] ; *Freese* v. *Odd Fellows' Sav. Bank,* 136 Cal. 662, [69 Pac. 493].)

It is not intended or intimated that the appellant herein is either charged or suspected of any wrongdoing in his assertions and evidence as to the existence of a valid gift *causa mortis* in the instant case, but only that the means by which he sought to make such a gift effective were inadequate under the form of our statute to accomplish the desired result. Section 1147 of the Civil Code provides as follows: ''A verbal gift is not valid unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee.'' It is not necessary to go far afield in search of authorities construing this section of the Civil Code. The case of *Adams* v. *Merced Stone Co.,* 176 Cal. 418, [3 A. L. R. 928, 178 Pac. 498], contains a very clear and comprehensive statement of the requisites to the validity of gifts *causa mortis.* It is there held that in order to the completion of such verbal gifts the donor at the time of making the gift must do something which has the effect of placing in the hands of the donee the

means of obtaining the control and possession of the thing given; and in the case of a *chose in action* not evidenced by a written instrument the only means of obtaining control that is recognized by the authorities is an assignment in writing or some equivalent thereof. The donor must part with the dominion over the thing given, and unless that is done the gift is not complete. In announcing this view the court in that case quoted from the case of *Pullen* v. *Placer County Bank,* 138 Cal. 170, [94 Am. St. Rep. 19, 66 Pac. 740, 71 Pac. 83] which has special application to the instant case by reason of the similarity of its facts. In the case quoted a father had given to his son a check for a thousand dollars upon a bank with the intention of making him a gift of that amount of money. After delivering the check to his son the father stated that he wished that he would not present it until after his death. To this the son agreed, and upon the death of the father presented the check to the bank, where it was refused payment upon the ground that it had been revoked by his father's death. The court upheld the action of the bank in this respect, saying: "In the present case the gift was verbal, and the property which the father intended to give to his son was money on deposit in the bank. The check was not itself the property which the father intended to give but merely a direction to the defendant to pay one thousand dollars to the son. It indicated the amount to be given and the place at which the money was to be delivered. . . . The request of the father that the son would not present the check until after his death did not affect the sufficiency of the gift. If the gift were complete by the delivery of the check such request would not destroy its validity; but if not then complete this request would not have the effect to dispense with its presentation for the purpose of making it complete. By the failure of the son to present the check there was no delivery of the money during the lifetime of the father, and the gift was not therefore complete."

It is impossible to discover a distinction between the case last above cited and the case at bar. The appellant herein was given by the donor a power of attorney which would, if executed, have placed the money in the banks in question in each case within the appellant's custody; but this power of attorney was never executed to the extent of placing the

funds in either of these banks within the appellant's custody or control. It was like the check in the case cited in that it was merely an order for the delivery of the money which must have been executed during the would-be donor's lifetime in order to effectuate her gift, but it was unlike the check in one very essential respect, since even if executed it would not have removed the money in question beyond the dominion of the donor, since the possession of the money by the donee would have been simply the possession of his principal and not of himself. The donor would still through her agent have had complete possession and dominion over the thing which was the subject of the attempted gift, and this being so, the power of attorney in question must be held to have been an ineffectual method of completing the gift *causa mortis* so as to make it valid in law. (*Edwards* v. *Guaranty etc. Bank,* 47 Cal. App. 86, [190 Pac. 57]; *Provident etc.* v. *Sisters etc.,* 87 N. J. Eq. 424, [100 Atl. 894].)

The judgments are affirmed.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 20, 1921.

All the Justices concurred.