[Civ. No. 5816. First Appellate District, Division Two.—June 6, 1927.]

## GEORGE DELLEPIANE, Appellant, v. W. J. HYNES, as Administrator, etc., et al., Respondents.

[1] GIFTS—DEPOSIT IN SAVINGS BANK—DELIVERY OF PASS-BOOK—AB-SENCE OF WRITTEN ASSIGNMENT—TITLE.—The delivery of a pass-book covering a savings account, with the intention of making a gift of the deposits represented by it, is sufficient to pass title to the deposits without written assignment or order, under section 1146 of the Civil Code, defining a gift, section 1147, relating to verbal gifts, section 663, defining personal property, and section 953, defining choses in action.

[2] ID. — BONDS DEPOSITED IN BANK FOR SAFEKEEPING — DELIVERY — TITLE.—Delivery of a savings account pass-book, containing a voucher for the safekeeping of bonds, with the intention of making a gift of the bonds, is sufficient to pass title without written as-signment or order, where the bank held the bonds under an agreement to deliver, on presentation of the book, bonds of like amount, and the rules of the bank required withdrawals to be noted in the pass-book.

[3] APPEAL — SUFFICIENCY OF EVIDENCE TO SUPPORT CONTRARY JUDG-MENT—ABSENCE OF FINDINGS—NEW TRIAL.—Where a judgment must be reversed but there are no findings sufficient to support a

---

1. Gift of savings deposit by delivery of pass-book, notes, 51 Am. St. Rep. 445; 40 A. L. R. 1249; 18 L. R. A. 171; 19 L. R. A. 700. See, also, 12 R. C. L. 946.

3. See 2 Cal. Jur. 994.

contrary judgment, the cause must be returned for a new trial notwithstanding the evidence covers all the elements necessary to constitute such contrary judgment.

(1) 28 C. J., p. 665, n. 60, 61, p. 699, n. 39, p. 702, n. 73.    (2) 28 C. J., p. 658, n. 71.    (3) 4 C. J., p. 1201, n. 44.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    Thomas F. Graham, Judge.    Reversed.

The facts are stated in the opinion of the court.

Walter S. Brann, Edgar H. Rowe, Jr., and Brann, Van Duyn, Boekel & Rowe for Appellant.

Cullinan & Hickey and William T. Sweigert for Respondent Hynes.

T. E. K. Cormac, S. V. Bolles and J. Carfraie Birnie for Respondent Lourens.

Louis Ferrari for Respondent Bank of Italy.

NOURSE, J.—Plaintiff sued to quiet title to five United States Liberty bonds valued at $4,500 held by the Bank of Italy as a depositary for safekeeping.    Judgment went for the defendants and the plaintiff has appealed upon a typewritten record.

The complaint is in the ordinary form in an action to quiet title to personal property.    It alleges that on the sixth day of July, 1920, Sophia Reith and the plaintiff opened a joint savings account with the defendant Bank of Italy, numbered 126900, said account being payable to either of said depositors or to the survivor of each; that Sophia Reith died in April, 1924, and at the time of her death there was and still is on deposit in the said account in said Bank Liberty bonds of the value of $4,500 and accrued and accruing interest thereon; said bonds and said interest are and were for some time prior to the death of said Sophia Reith the property of plaintiff.    The answer of the Bank of Italy denies that there was at the time of the death of said Sophia Reith on deposit in any account in said Bank of Italy Lib-

erty bonds of the value of $4,500, or in any amount, but admits that said bonds were deposited by said Sophia Reith and alleged that the deposit was made in her sole name. By way of separate defense it is alleged that there is on deposit with said bank $4,500 worth of Liberty bonds; that the plaintiff claims said bonds as the survivor of the joint savings account of said parties and that the defendant Bank of Italy claims no right, title, or interest thereto. The public administrator also denies that there is on deposit with the defendant Bank to the joint account of plaintiff and Sophia Reith Liberty bonds of any value and alleges that at the time of the death of said Sophia Reith there were and are now on deposit with said Bank Liberty bonds of the value of $4,500 in an account under the sole name of said Sophia Reith. Trial was had before the court without a jury and findings of fact and conclusions of law were made from which it appears that the trial court found, in accordance with the denials of the issues raised by the complaint, that no bonds were held by the defendant Bank of Italy in the joint savings account of the plaintiff and Sophia Reith; that the said Bank had on deposit $4,500 in Liberty bonds in the sole account of Sophia Reith, and that plaintiff had no right, title, or interest in or to said bonds or any part thereof.

The facts of the case, which are not disputed, are that on July 5, 1920, Sophia Reith and the plaintiff opened a savings account with the defendant Bank of Italy payable to either or the survivor of them and received from the Bank a pass-book numbered 126900. Deposits and withdrawals were made from time to time from this account and no question is now raised as to the right of plaintiff to the balance of said account. At the same time the deceased deposited in a safe deposit box at another branch of the same Bank five United States Liberty bonds of the par value of $4,500. This box was in the joint names of the deceased and the plaintiff and both had access to it. Some sixteen months later the depositors relinquished this box and the deceased deposited the bonds with the defendant Bank in what is termed the "safekeeping deposit account." This deposit was made in the sole name of the deceased and was designated as "S. K. D. No. 2510 Savings Account No. 126900." At the time of this deposit a printed form of deposit slip

or pass-book was issued to the deceased and pasted into pass-book No. 126900. This was the only form of voucher or pass-book issued to cover the deposit of the Liberty bonds. It contains the rules under which the deposit is made, from which it appears that the bank undertakes to safely keep the bonds deposited, to collect the interest coupons when due and pay the proceeds thereof into the savings account represented by the pass-book to which the voucher is attached. The Bank assumes no obligation other than of returning upon demand made prior to maturity United States bonds of the same issue and of the same par value as the securities deposited. It agrees, however, to secure payment from the government of the principal of the bonds upon maturity, and of the interest coupons, and to pay the same into the savings account of the depositor. The Bank also reserves the right to require three days' notice for the withdrawal of any of the securities and stipulates that such notice must be noted in the pass-book. In accordance with these rules the Bank regularly collected the proceeds of the interest coupons and deposited these in the joint savings account No. 126900.

Sophia Reith retained possession of the pass-books and made deposits and withdrawals from the joint savings account over a long period of time and gave considerable sums of money so withdrawn to the plaintiff, who during this time was engaged to marry her and was being assisted by her in operating a grocery store. Three days before she died, and while critically ill in a hospital in San Francisco, she called the plaintiff to her bedside and asked him to hand her her purse, from which she removed the pass-book covering the joint account of the plaintiff and herself and to which the voucher covering the deposit of the bonds was attached. She then handed this book to the plaintiff and said, "Take this book it is yours." Immediately following her death demand was made upon the Bank in behalf of the plaintiff for delivery of the bonds, but the Bank refused to make delivery and now agrees to deliver the bonds in accordance with any final judgment determining the question of their ownership.

As we have said, the evidence is all without contradiction. It is true that the evidence of the manual delivery of the book to the plaintiff is found in the testimony of the plain-

tiff alone. This delivery took place in the presence of the plaintiff and the donor, no one else being present. His testimony of what occurred is not controverted, however, and is not impeached by any competent or relevant testimony. The only attack upon this testimony by the respondents is based upon conjectures and unjustifiable innuendos which are founded upon statements of counsel and are unsupported by any competent testimony. Though the trial court was not called upon to find upon the specific question of the manual delivery of the pass-book and the donative words accompanying it, we are satisfied from the review of the entire record that if a finding had been made it would necessarily have been in accordance with the testimony of the plaintiff. We must, however, in view of the record, take it as a fact proved that the pass-book was actually delivered to the appellant with the intention on the part of the donor to transmute everything of value that it called for.

The question next arises whether the delivery of the pass-book was a sufficient delivery of the right to the bonds on deposit within the terms of section 1147 of the Civil Code. This section reads: "A verbal gift is not valid, unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee."

In view of the peculiar nature of the deposit it is manifest that the bonds which were deposited by the deceased in November, 1921, were not capable of actual delivery to the appellant in April, 1924. These bonds were held by the Bank under a special form of deposit which called for their safekeeping and the delivery upon demand of bonds of the same issue and par value. It was not a bailment or a deposit such as would be made in a safe deposit box where the identical bonds deposited must be returned. It was necessary, therefore, for the appellant to show that by the delivery of the pass-book he was given "the means of obtaining the possession and control" of the bonds which the Bank held on deposit or of bonds of a similar character and value which the Bank had agreed to deliver on demand.

[1] A gift is defined by section 1146 of the Civil Code, as "a transfer of personal property made voluntarily, and without consideration." Personal property is defined by

section 663 of the same code as "every kind of property that is not real." Within this definition are included choses in action which are defined by section 953 of the same code as "a right to recover money or other personal property by a judicial proceeding." The universal rule is that a chose in action which creates a liability against a third person and which is in writing is the subject of a gift *causa mortis* by mere delivery. In 28 C. J., page 699, it is said that this rule has been applied to promissory notes, bonds, bills of exchange, savings bank books, certificates of deposit, or deposit notes and insurance policies. It is also the general rule that where a chose in action is not evidenced by a note or other instrument in writing which can be delivered, but is merely a claim against a third person which must be established by parol, a written assignment of the demand by the donor is necessary to complete delivery. (*Idem;* and see *Adams* v. *Merced Stone Co.,* 176 Cal. 415, 419 [3 A. L. R. 928, 178 Pac. 498]; *O'Shea* v. *Secotte,* 52 Cal. App. 331, 334 [198 Pac. 812].) It is an equally well-settled rule that delivery of a savings bank pass-book is a valid gift of the money deposited because such book is the record of the depositor's account and its production authorizes control of the deposit. (28 C. J. 702, and cases cited.)

In stating that this rule is well established we should not be understood as implying that it has always been so. In 1819 the Court of King's Bench in the case of *Irons* v. *Smallpiece,* 2 Barn. & Ald. 551, 552, said: "In order to transfer property by gift there must either be a deed or instrument of gift, or there must be an actual delivery of the thing to the donee." That case was cited and approved by the supreme court of New York in 1858 in the case entitled *Huntington* v. *Gilmore,* 14 Barb. (N. Y.) 243. In 1806 the question coming before Chancellor Kent as chief justice, in the case entitled *Noble* v. *Smith,* 2 Johns. (N. Y.) 52, 56 [3 Am. Dec. 399], the learned jurist said: "Here was not even an attempt at a symbolical delivery, and giving the testimony the strongest possible construction, in favor of the defendants, it amounted to nothing more than saying, *I give,* without any act to enforce it. A mere symbolical delivery would not, I apprehend, have been sufficient. The cases in which the delivery of a symbol has

83 Cal. App.—39

been held sufficient to perfect the gift were those in which it was considered as equivalent to actual delivery, as the delivery of a key of a trunk, of a room or warehouse, which was the true and effectual way of obtaining the use and command of the subject.'' Later Chancellor Kent wrote his Commentaries, and in volume 2, page 439, he cited the Irons case as stating the law. In *Hunter* v. *Hunter,* 19 Barb. (N. Y.) 631, 635, the court cites with approval from 2 Kent's Commentaries, 439. In *Woodruff* v. *Cook,* 25 Barb. (N. Y.) 505, 512, the court cites with approval the foregoing authorities. In a note to section 1147 of the Civil Code the commissioners stated specifically that they are stating the rule as contained in the foregoing authorities and that they are not stating the rule in some of the later authorities in England. The rule of the Irons case has been criticised by many of the later authorities as being far too broad, particularly as it barred every form of "symbolical" delivery where the "thing" itself was not capable of manual delivery. Though the case was controlling in the common-law states, it cannot be taken as expressing the rule of those code states where symbolical delivery is expressly permitted.

Section 1147 of our Civil Code was enacted in 1872, based upon Field's Draft of the New York Civil Code, section 501. Our courts have not been called upon to pass on the specific question of the effect of a delivery of a savings account pass-book and our attention has not been directed to any California cases which depart from the rule that, where the chose in action is evidenced by a writing, a delivery, without assignment, is sufficient. Respondents cite *Bryson* v. *Security Trust etc. Bank,* 29 Cal. App. 596 [156 Pac. 987], to the point that great danger might lie to the depositor if the bank should carelessly pay out upon the production of the pass-book without first satisfying itself that the holder was legally entitled. The rule of that case was based entirely upon *Smith* v. *Brooklyn Sav. Bank,* 101 N. Y. 58 [54 Am. Rep. 653, 4 N. E. 123], and though it is not important here, as it does not in any way criticise or depart from the rule for which appellant contends, it is interesting to note that the Smith case does not state the prevailing rule in New York, but that the rule of that jurisdiction is found in the later case of *Ridden* v. *Thrall,* 125 N. Y. 572, 577 [21

Am. St. Rep. 758, 11 L. R. A. 684, 26 N. E. 627]. In the latter case the decedent, who was about to enter a hospital for an operation, delivered to the plaintiff a tin box containing sixteen pass-books covering deposits in an equal number of savings banks with no other donative declaration than that he gave him the box and its contents. In holding that a gift was made to the plaintiff of the entire deposits the court said: "The gift was consummated by the delivery of the books, and no other formality was needed to constitute the actual delivery of the bank deposit needful to vest the possession and title in the donee. In savings banks in this state such deposit-books are issued as evidence of the indebtedness of the banks. . . . It answers the same purpose in the case of a savings bank that is answered by a certificate of deposit in the case of other banks." In *Pierce* v. *Boston Sav. Bank,* 129 Mass. 425, 432 [37 Am. Rep. 371] it was said that "The book is the instrument by which alone the money can be obtained and its possession is thus some evidence of title." In the same case it was said that the savings bank pass-book is the depositor's voucher for the amount held on deposit by the bank and is the only security he has as evidence of the debt. It is upon the theory that the pass-book is written evidence of the obligation of the bank that it is placed within the same class as promissory notes, bills of exchange, bonds, mortgages, certificates of deposits, and like other written evidences of indebtedness. Thus it is said in Pomeroy's Equity Jurisprudence, volume 3, section 1148, that the rule is well established that choses in action of the character just mentioned, including savings bank pass-books may pass by delivery and become the subject of a valid gift. Thornton on Gifts and Advancements, section 273, says that "Any written obligation is the subject of gift without indorsement or assignment." The rule stated is in harmony with the provisions of section 1147 of the Civil Code, which requires in the case of an oral gift that "the means of obtaining possession and control" of the subject of the gift must be given to the donee. It may be stated generally, then, that the rule is that where a chose in action is not evidenced by a written instrument the only means of obtaining control over it and hence the only means of making a valid gift is by an assignment in writing or some act equivalent thereto. (*Adams* v. *Merced Stone Co.,*

*supra.*)  But where the chose in action is evidenced by a writing sufficient to represent the indebtedness it may be the subject of a gift without indorsement or assignment.

A case in point is *Snidow* v. *Brotherton,* 140 Va. 187 [40 A. L. R. 1246, 124 S. E. 182].  There a laborer, who was fatally injured in the course of his employment, delivered to the superintendent of the company by which he was employed a key to his trunk, which was located in his room some distance away, with instructions to the superintendent that in his trunk would be found his savings bank book, United States war savings stamps, and receipts for Liberty bonds, which he wished the superintendent to procure and deliver to Anna Brotherton.  He died a few hours later and upon an examination of his trunk the superintendent found the pass-book, showing $1,372 on deposit in a savings bank, $240 in United States war savings stamps, and a receipt from the bank for United States Liberty bonds of the value of $500 held by the bank for safekeeping.  The Virginia court held that the delivery of the savings bank pass-book constituted a valid delivery of the money on deposit and therein drew the distinction between a pass-book upon a savings account and a pass-book upon a general deposit account. (See, also, *Thomas' Admr.* v. *Lewis,* 89 Va. 1 [37 Am. St. Rep. 848, 18 L. R. A. 170, 15 S. E. 389].)  As to the war savings stamps, the court held that the validity of the transfer could not be questioned as all the elements of a gift were present.  As to the bonds held by the bank, it was said that the receipt of the bank of its obligation to return a like amount of bonds of the same issue on demand was sufficient evidence of title and that the delivery of the receipt was equivalent to the delivery of the bonds themselves. In an exhaustive note in 40 A. L. R., at page 1249, cases are cited showing the universal rule to be that the delivery of the pass-book in a savings account with donative intent is a valid gift of the moneys on deposit.  The rule of the cases cited is based upon the theory that the pass-book is the written evidence of the chose in action which the depositor holds against the bank for payment of the moneys on deposit. They are all in accord with the general rule that a chose in action evidenced by a writing may be the subject of an oral gift without assignment or other writing and that it is only when the chose in action is not in writing, such as

an unliquidated account (*Adams* v. *Merced Stone Co.*, 176 Cal. 415 [3 A. L. R. 928, 178 Pac. 498], that a written assignment or order is necessary to complete the gift.

These cases are in full accord with *Mellor* v. *Bank of Willows*, 173 Cal. 454 [160 Pac. 567]. That case involved the validity of a gift of certificates of deposit in a commercial account without the indorsement of the depositor. The supreme court there held that the gift was complete,· notwithstanding the failure to indorse the certificates of deposit, upon the general rule applying to choses in action evidenced by writing to which we have heretofore adverted, and (page 461) says: "In this state it has been well settled that 'negotiable paper payable to order is the subject of a *donatio causa mortis,* even though it is not indorsed by the payee.' (*Edwards* v. *Wagner,* 121 Cal. 376 [53 Pac. 821].) This rule has been applied to a promissory note (*Druke* v. *Heiken,* 61 Cal. 346 [44 Am. Rep. 553]), United States bonds (*Vandor* v. *Roach, supra*), and bills of exchange (*Edwards* v. *Wagner, supra*). It applies with equal force to a certificate of deposit, payable to order, when transferred as a gift *causa mortis*."

The great weight of authority is, therefore, that the delivery of a pass-book upon a savings account with the intention of making a gift of the deposits represented by the book is sufficient to pass title to the deposits without a written assignment or order. The authorities are not agreed as to the sufficiency of the transfer where the rules of the bank under which the deposit has been made require a written order upon the bank in addition to the presentation of the pass-book. In *Ridden* v. *Thrall*, 125 N. Y. 572, 578 [21 Am. St. Rep. 758, 11 L. R. A. 684, 26 N. E. 627], the New York court held that the rights of the donee were not affected by a by-law of the bank requiring a written order of the depositor when someone other than the depositor seeks to draw the money. It was pointed out that the depositor could draw the money without making an order simply by the presentation of the pass-book and that this right was one which could be transferred to any legal owner of the pass-book. The effect of the decision is that the pass-book is in itself the evidence of the obligation of the bank and that the question as to the ownership of the book was one to be determined by competent evidence. That the

donee of the pass-book had the same right to enforce payment as the donee of any non-negotiable chose in action, certificate of deposit, or unindorsed note. In such a case he may be called upon to prove his ownership, but this goes only to a question of evidence of title and not to the substantial right of the parties. Putting it in another way, if a party has come into possession of a pass-book by purchase or gift a written order or assignment would merely be evidence of the right and not the means of enforcing the right. Such is the rule in New York, but it is not necessary for us to go that far, because the pass-book covering the deposit of the bonds in suit did not require a written order or assignment of any character.

[2] While no authorities of this state have been called to our attention relating to a pass-book or voucher for the safekeeping of bonds such as we have here, we can see no distinction between such a book and one issued by a savings bank for the safekeeping of money. In both cases the bank agrees to pay out or deliver on presentation of the book, not the money or bonds which were deposited, but money and bonds of like amount, and in both cases the rules of the bank provide that withdrawals of either the bonds or the money must be noted in the proper pass-book. In the rules of the bank governing the deposit of the bonds the voucher issued to the decedent is treated throughout as a pass-book of a character similar to the pass-book issued for the savings account. In the savings account pass-book, which is included in the record, printed notice is given to the depositor that no money will be paid out from the account without the passbook and that no transfer of the pass-book shall be valid until actually made in the books of the bank. In the statement of the terms and conditions governing the savings account no instructions are made as to the transfer of the pass-book, but it is provided that all deposits may be withdrawn only as provided in the by-laws of the bank and upon presentation of the pass-book. However, in the printed rules covering the deposit of the bonds for safekeeping no limitation is made upon the transfer of the pass-book and it is not required that written notice for the withdrawal of the bonds must be given to the bank, but merely that the bank reserves the right to require three days' notice of such withdrawal. As between the pass-book covering the

bonds and the pass-book for the savings account the principal difference is that the bonds will be delivered on presentation of the book alone, while in the savings account a written order by the depositor is required in addition to the pass-book when presented by one other than the depositor. A bank-book covering an ordinary commercial account differs from both of these pass-books in that payment is not made on presentation of the book, but is made on a check against the account only. Thus the transfer of a commercial account-book does not give any power of possession or control of the money in the general account. On the other hand, this voucher, or pass-book, covering the bond account contains a receipt on the part of the bank of the bonds therein listed and is accordingly evidence of the obligation of the bank to return bonds of a like issue and amount to the depositor on demand. This obligation of the bank is, therefore, a chose in action running to the depositor evidenced by the writing and as such was the subject of a gift from her to the donee. It is of little importance that before the bank would feel safe in delivering the bonds to the donee it would require proof of the legal ownership of the book by him. As we have said, that is merely a matter of evidence and not a matter of right. Thus, when the depositor delivered the pass-book to the appellant she placed in his hands the means of obtaining the dominion and control of the bonds which she had deposited with the bank or of bonds of like character and amount.

It was not, as argued by respondents, the chose in action between the United States government and the decedent to pay the bonds at their maturity which she attemped to transfer to the appellant, but the chose in action which was transferred by the gift was that represented by the pass-book, to wit, the right of the depositor to demand and receive from the bank bonds of like issue and amount to those deposited. This chose of action was represented in writing by the pass-book and the entries therein and, inasmuch as the bonds themselves were not capable of actual delivery, the depositor complied with all the terms of section 1147 of the Civil Code when she delivered to the appellant the pass-book which was "*the means* of obtaining possession and control of the thing" given.

We have intentionally refrained from entering into a discussion of the distinctions drawn between a gift *causa mortis* and one *inter vivos*, because to do so would extend the opinion beyond reasonable limits. In view of the serious illness of the donor in this case and her death resulting from that illness within three days thereafter it may be presumed that the gift was one *causa mortis*. But the question is wholly immaterial, because if the gift was a good one as a *donatio causa mortis* (and as we have seen from the authorities such must be the conclusion), it was certainly good as a gift *inter vivos*.

[3] The evidence covers all the elements necessary to constitute a completed gift of the bonds in suit, and if a finding had been made on that specific issue it would have required a judgment for the appellant, but, inasmuch as there are no findings of fact which would support a contrary judgment, the cause must be returned for a new trial.

Judgment reversed.

Koford, P. J., and Sturtevant, J., concurred.