[No. C009597. Third Dist. Apr. 14, 1992.]

MICHAEL E. PARKER et al., Plaintiffs and Appellants, v.
FRED WALKER, Defendant and Respondent.

1174

**COUNSEL**

Deborah K. Patterson for Plaintiffs and Appellants.

Danny L. Haukedalen, McDonough, Holland & Allen and Donald C. Poole for Defendant and Respondent.

**OPINION**

**SIMS, J.**—In this case, we hold that a petition in probate, filed pursuant to Probate Code section 9860 (further statutory references are to the Probate Code unless otherwise indicated), initiates an "action" subject to the bar of the two-year statute of limitations for oral agreements set out in Code of Civil Procedure section 339, subdivision 1 (hereafter Code Civ. Proc., § 339(1)).

### FACTUAL AND PROCEDURAL BACKGROUND

In 1963, Fred Walker and Glen Crosley as coplaintiffs sued Robert and Berniece Prupas (Prupas) for breach of contract arising out of plaintiffs' sale of a dry cleaning business in the Lake Tahoe area to defendants. The complaint alleged that plaintiffs and defendants entered into an agreement for the sale of the business under which plaintiffs agreed to assign to defendants their leasehold interest in the premises and the parties executed

conditional sales contracts for the supply and installation of equipment, and that defendants thereafter failed to pay the amounts due under the agreement.

Following trial, Walker and Crosley won a joint judgment for $61,454.41 against Prupas. The trial court's award did not allocate the proceeds of the judgment as between Walker and Crosley.

After Prupas paid the judgment, in 1966, the proceeds were put into a trust account in the names of Walker and Crosley. Max Hoseit, the attorney for Walker and Crosley in the lawsuit, was trustee.

Shortly after the end of the litigation it became clear that Walker and Crosley could not agree on how the judgment proceeds were to be divided. As a result, the money remained in the trust account, where the interest was compounded each year; eventually it was converted to a certificate of deposit. As of August 29, 1989, this certificate was valued at $262,354.68.

Crosley assigned his interest in the judgment proceeds to his wife, Pearl, in July 1967. He died before October 1967. Walker and Pearl Crosley were unable thereafter to reach any agreement as to the trust account.

Attorney Hoseit, in repeated communications with Walker and Crosley, and subsequently with Crosley's widow and her son, Michael Parker, advised that if they could not settle among themselves how the money was to be divided it would be necessary to arbitrate or litigate the matter. No settlement was reached. For reasons not made clear by the record, no legal proceedings concerning the division of the money occurred prior to those discussed below.

Pearl Crosley died in 1971. Her will named her son Michael Parker and her grandson Glen Michael Parker as beneficiaries, with Michael to receive 75 percent of the estate and Glen to receive 25 percent. Attorney Hoseit acted as executor of Crosley's estate.

In 1975, after the estate's property had been distributed except for the contingent claim against Walker, Hoseit in his capacity as executor petitioned the probate court asserting that claim in an amount estimated at $8,000 and seeking an order to distribute that sum to the Parkers so that the estate could be closed. The probate court ordered the distribution of the estate's remaining property, "whether described or not," to the Parkers. However, the distribution did not occur.

In November 1988, the Parkers filed a "Petition To Establish Estate's Claim of Ownership of Personal Property and For Order Directing Executor

To Transfer Property To Persons Entitled Thereto," pursuant to sections 9860-9868.[1] The petition asserted that the executor had not distributed any part of the trust account, despite the probate court's order of 13 years before, because Walker continued to dispute the entitlement of Crosley or her heirs to any share thereof and would not authorize the executor to turn over any funds from the account to the Parkers. The petition claimed that the estate's share of the trust account was 50 percent, because Walker and Crosley had been equal partners in the business which was the subject of the Prupas lawsuit and no evidence introduced in that suit indicated that any other division of the judgment would be appropriate. Finally, the petition requested a court order determining that the estate was the true owner of a one-half interest in the trust account and directing the executor to transfer one-half the funds in the account to the Parkers.

In January 1989, Walker filed objections to the Parkers' petition and a petition requesting the court to determine that he was the sole owner of the funds in the trust account and to direct the executor of Pearl Crosley's estate to transfer the funds to him. The Parkers filed objections to this petition.

The competing claims of the parties were tried by court trial in 1989.

At trial, Walker testified that he and Crosley agreed in 1962 to form a joint venture to obtain a lease in a newly developed shopping center in Stateline, California, and to operate a dry cleaning business under a Martinizing franchise. Walker was a distributor of franchises for the Martin Equipment Company; Crosley was a real estate broker and contractor. They obtained the lease and equipment, but before the shopping center was completed Crosley's doctor advised him to leave the Lake Tahoe area because of his emphysema. Crosley told Walker that Crosley was terminating the joint venture on his doctor's advice. They agreed orally that Crosley would retain

---

[1]Technically, the petition was filed under provisions, collectively titled "Conveyance of Person," which formed chapter 11 of part 5 (Estate Management) of division 7 (Administration of Estates of Decedents) of the *former* Probate Code. (Enacted Stats. 1987, ch. 923, § 93; repealed Stats. 1990, ch. 79, § 13.) These provisions were continued without change in all relevant respects in the current code. (Stats. 1990, ch. 79, § 14.) Consequently, for convenience, we refer to the current code.

Section 9860 provides in pertinent part: "(a) The personal representative or any interested person may file a petition requesting that the court make an order under this chapter in any of the following cases: [¶] . . . [¶] (3) Where the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another. [¶] (4) Where the decedent died having a claim to real or personal property, title to or possession of which is held by another. [¶] (b) The petition shall set forth the facts upon which the claim is based."

The Parkers' petition was authorized under section 9860, subdivision (a)(4). Walker's subsequent petition (discussed *post*) was authorized under section 9860, subdivision (a)(3).

the $8,000 commission he had received on the shopping center lease, that Walker would retain his commission on the dry cleaning equipment, and that Walker would find a third party to buy the equipment and assume the lease.

Walker located Prupas as a prospective buyer. Walker and Prupas agreed in 1963 that Prupas would assume the lease and would buy not only dry cleaning equipment, but also laundromat and shirt cleaning equipment. The total contract price was to be $78,617.77, allocated $10,000 to installation of the equipment, $3,000 to the lease, and the balance to the purchase of the equipment.

*Walker and Crosley agreed orally that Crosley would receive $3,000 for assignment of his interest in the lease and that Walker and Crosley would install the equipment for $10,000 and share equally in any profit or loss thereon.* Walker financed the equipment by himself; the cost of installation exceeded $20,000 thereby resulting in a loss of more than $3,000 to which Crosley was otherwise entitled.

Prupas subsequently defaulted on the contract. Attorney Hoseit filed suit against Prupas, naming Walker (individually and doing business as Allied Equipment) and Crosley as coplaintiffs. Judgment was awarded to Walker and Crosley as stated above.

After the end of the litigation, but before all the money due under the judgment had been paid, Crosley asked Walker for some of the money. Crosley also approached Walker about "ten times" for a settlement. Walker replied to Crosley's claim of entitlement to money from the judgment: "You are out of your mind." In Walker's view, he had lost money on the sale of the business to Prupas, while Crosley had gained $8,000 on his commission; therefore, Crosley was entitled to nothing further. At one point Walker believed for a short time that Crosley was entitled to $3,000 from the judgment proceeds because the lease for the business was in Crosley's name, but then he examined the records and discovered the lease was actually in his own name; after making this discovery he decided that Crosley was not entitled to the $3,000 after all.

Attorney Hoseit testified that payments made pursuant to the judgment were made payable jointly to Walker and Crosley. He assumed Walker and Crosley each owned one-half the judgment until Walker instructed him not to disburse any funds from the trust account pending a resolution of his dispute with Crosley about their respective shares in the judgment.

The Parkers filed a request for statement of decision on eight controverted issues, including the following: "3. Was there an oral agreement between

WALKER and CROSLEY in which CROSLEY agreed to receive only $3,000.00 from the judgment fund? [¶] 4. Is WALKER barred by the statute of limitations for oral agreements, under section 339(1) of the Code of Civil Procedure, from asserting an alleged oral agreement between WALKER and CROSLEY concerning the judgment fund?"

The trial court issued a statement of decision holding that Walker was entitled to the entire judgment proceeds. *The court found that Walker and Crosley had agreed Crosley was to receive $3,000 for assignment of his interest in the lease and that they would share equally any profit or loss on the installation of the equipment; that this was the full extent of Crosley's participation in the Prupas contract; that Crosley's share of the loss on the installation considerably exceeded his commission; and that therefore Crosley was entitled to nothing under the contract and judgment.* The court found further that the statute of limitations for actions on oral agreements (Code Civ. Proc., § 339(1)) did not apply to this proceeding because Walker was not claiming breach of contract.

The Parkers thereafter filed objections to the trial court's statement of decision. As pertinent, the Parkers requested the trial court expressly state whether or not the judgment was a joint venture asset, and whether or not there was an oral agreement between Walker and Crosley under which Crosley agreed to receive only $3,000 from the judgment fund. In addition, the Parkers asserted with respect to Code of Civil Procedure section 339(1) that any action upon a contract, obligation, or liability not founded upon an instrument in writing falls within the statute, regardless of whether there is a claimed breach of contract. The Parkers contended that Walker's claim to the entire judgment proceeds was such an action because it was based on the purported terms of an oral agreement between himself and Crosley, and that this claim constituted a request for affirmative relief which was barred by Code of Civil Procedure section 339(1).

In its ruling on the Parkers' objections, the trial court issued a further statement of decision which augmented the original statement of decision by finding expressly: "The joint venture was terminated in early 1963 when Crosley told Walker that he was terminating the relationship on his physician's advice. *Walker and Crosley thereafter agreed that Crosley's only interest in the contract with Prupas was $3,000 for the lease and an equal share of any profit or loss on installation of the equipment. The proceeds of the judgment were received subject to this later agreement between Walker and Crosley* and not as joint venturers under the original joint venture agreement." The further statement of decision did not modify or change the findings and conclusions stated in the original statement of decision.

The trial court thereafter entered judgment for Walker, from which the Parkers appeal.

## Discussion

Although the Parkers attack the judgment on a variety of grounds, we find dispositive their contention that the trial court erred by ruling that the statute of limitations for actions on oral agreements did not apply to Walker's claim.

### I

*In the Absence of Evidence Showing a Different Distribution Is Appropriate, the Joint Judgment Is Presumed to Be Owned Equally by the Coplaintiffs*

Although the Parkers' briefs do not explicitly make this argument, the Parkers' claim to one-half of the judgment proceeds necessarily depends on the premise that each of the plaintiffs in Walker v. Prupas ((1963) Super. Ct. El Dorado County, No. 12258) must be presumed to have had an equal interest in the joint judgment unless proven otherwise. This premise is correct.

Code of Civil Procedure section 578 provides that where a trial court enters judgment for coplaintiffs it may, "when the justice of the case requires it, determine the ultimate rights of the [plaintiffs], as between themselves." Here, no apportionment of the rights of the plaintiffs was made in the Walker v. Prupas action. Therefore, the procedure authorized by Code of Civil Procedure section 578 does not determine the rights of the parties in the judgment.

Code of Civil Procedure section 378, subdivision (a), provides: "All persons may join in one action as plaintiffs if: [¶] (1) They assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action; or [¶] (2) They have a claim, right, or interest adverse to the defendant in the property or controversy which is the subject of the action."

The complaint filed by Walker and Crosley in Walker v. Prupas, *supra*, pled that "plaintiffs" suffered all the wrongs complained of and were entitled to all the relief sought. The complaint did not allege that any transaction or occurrence involved one plaintiff but not the other. Accordingly, the joinder of Walker and Crosley as plaintiffs was based on an alleged common "claim, right, or interest." (Code Civ. Proc., § 378, subd. (a)(2).)

A cause of action to recover money in damages, as well as money recovered in damages, is a chose in action and therefore a form of personal

property. (Civ. Code, §§ 663, 953; *McFadden* v. *Santa Ana etc. R'y. Co.* (1891) 87 Cal. 464, 467 [25 P. 681]; *Dellepiane* v. *Hynes* (1927) 83 Cal.App. 604, 608-609 [257 P. 180]; *Finley* v. *Winkler* (1950) 99 Cal.App.2d Supp. 887, 891 [222 P.2d 345].)

"Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint interest, as provided in Section 683, or unless acquired as community property." (Civ. Code, § 686.) This provision applies to personal property. (*Krum* v. *Malloy* (1943) 22 Cal.2d 132, 135 [137 P.2d 18].) Thus, the joint judgment awarded to Walker and Crosley, being a personal property interest based on a common claim, is statutorily presumed to be an interest in common.

In *Rich* v. *Smith* (1915) 26 Cal.App. 775, 784 [148 P. 545] it was held that where a deed conveyed real property to two persons as tenants in common, there was a presumption, in the absence of other evidence, that the persons took undivided *one-half* interests in the property. We view this presumption as a commonsense presumption affecting the burden of producing evidence. (See Evid. Code, § 604.) We see no reason why *Rich*'s presumption, arising from a deed, should not be applied to this dispute involving a jointly held judgment. As a practical matter, the presumption is necessary because it furnishes a rule by which interests of tenants in common can be apportioned in the absence of other appropriate evidence calling for something other than an equal division of the property.

The burden was therefore on Walker to produce admissible evidence which could rebut the presumption that the judgment was to be divided equally between himself and Crosley. (See Evid. Code, § 500.) He sought to meet this burden below by relying on the oral agreement between himself and Crosley after Crosley's withdrawal from the joint venture due to illness. As we shall explain, this claim was barred by the statute of limitations for actions on oral agreements found in Code of Civil Procedure section 339(1).

## II

*Walker's Claim Was Barred by the Statute of Limitations Set Out in Code of Civil Procedure Section 339(1)*

A.  *An overview of the section 9860 procedure.*

In order to determine whether the statute of limitations may be asserted in a section 9860 proceeding, it is useful to recount the following summary of

section 9860 proceedings furnished by 1 Marshall and Garb, California Probate Procedure (5th ed. rev. 1991) section 1017, pages 10-33–10-34:

"The probate court has the power to determine who has title to property under Probate Code sections 9860-9868 (former Prob. Code, §§ 851.5, 852, and 853). The representative or any interested person may petition the court to decide whether the decedent or another person owned real or personal property or some interest therein. Notice of the hearing must be given at least 30 days in advance in accordance with Probate Code section 9861. Any interested person may secure a continuance before making a response in order to begin discovery proceedings or to prepare for the hearing. (Prob. Code, § 9862, former Prob. Code, § 851.5.)

"Any person claiming an interest may object to the hearing and the petition will not be granted if the petitioned court is not the proper court to hear the matter as a civil action. (Prob. Code, § 9864, former Prob. Code, § 851.5.) If a civil action is pending concerning such title and the court where it has been filed has jurisdiction, the probate petition is abated until the civil action is concluded except where the civil action was filed for the purpose of delay. (Prob. Code, § 9865, former Prob. Code, § 851.5.)

"At the time of hearing, the probate court can determine title and either order the representative to convey title or grant 'appropriate relief.' However, the court will not grant the petition if it believes that the matter should be determined in a civil action. (Prob. Code, § 9866, former Prob. Code, § 852; [].)"

It has been said of former section 851.5 (Stats. 1986, ch. 783, § 13, repealed by Stats. 1987, ch. 923, § 41) the predecessor of section 9860, that, "Section 851.5 contains no time limitation for filing a petition. [Citation.]" (*Estate of Blair* (1988) 199 Cal.App.3d 161, 166 [244 Cal.Rptr. 627]; *Estate of Sayles* (1982) 130 Cal.App.3d 275, 278 [181 Cal.Rptr. 543].) This remark refers to former section 851.5 itself which, like current section 9860, contained no time limitation. (Stats. 1986, ch. 783, § 13.) It does not answer the question whether the statute of limitations may be asserted as a defense to a section 9860 petition asserting a claim to ownership of property. To our knowledge, no published case has answered that question. We therefore turn to the applicable statutes for guidance.

B. *Section 1000 suggests that the statute of limitations in Code of Civil Procedure section 339(1) is applicable in an appropriate probate proceeding.*

Section 1000 provides: "Except to the extent that this code provides applicable rules, the rules of practice applicable to civil actions apply to, and constitute the rules of practice in, proceedings under this code."

Section 1000 was originally enacted as proposed by the Law Revision Commission in 1988. (Stats. 1988, ch. 1199, § 56, p. 3903; 19 Cal. Law Revision Com. Rep. (Nov. 1987) p. 930.) "Section 1000 replaces [inter alia] . . . the first paragraph of former section 1283." (19 Cal. Law Revision Com. Rep., *op. cit. supra*, at p. 930.)

The first paragraph of former section 1283 provided in relevant part, "Except as otherwise provided by this code or by rules adopted by the Judicial Council, the provisions of Part 2 (commencing with Section 307) . . . of the Code of Civil Procedure are applicable to and constitute the rules of practice in the proceedings mentioned in this code with regard to discovery, trials, new trials, appeals, and all other matters of procedure." (Stats. 1987, ch. 923, § 60.5, p. 3000, repealed by Stats. 1988, ch. 1199, § 64.5, p. 3909.)

Code of Civil Procedure section 339(1), together with many other common statutes of limitation, is found in part 2 of the Code of Civil Procedure. It is therefore a rule of practice expressly incorporated by former section 1283 and hence by that section's replacement, section 1000. To our knowledge there are no statutes or rules of court precluding application of Code of Civil Procedure section 339(1) to proceedings brought under section 9860. Consequently, section 1000 suggests Code of Civil Procedure section 339(1) is a rule of practice applicable to such a proceeding if the proceeding qualifies as an "action."

C. *A proceeding brought pursuant to section 9860 is an "action" subject to the statue of limitations in Code of Civil Procedure section 339(1)*

The statute of limitations at issue here is described by Code of Civil Procedure sections 335 and 339(1).

Code of Civil Procedure section 335 provides: "The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:"

Code of Civil Procedure section 339(1) provides in pertinent part: "Within two years: 1. *An action* upon a contract, obligation or liability not founded upon an instrument of writing, . . ." (Italics added.)

The question is therefore whether a proceeding initiated by a section 9860 petition is an "action" subject to these statutes.

Code of Civil Procedure sections 20 through 23 provide that all judicial remedies are either "actions" or "special proceedings."[2] Here, Walker's section 9860 petition clearly seeks the judicial remedy of declaring his ownership of the judgment proceeds. His petition is therefore either an "action" or a "special proceeding." Proceedings in probate are "special proceedings" within the meaning of section 23. (*Smith* v. *Westerfield* (1891) 88 Cal. 374, 378-379 [26 P. 206].)

Code of Civil Procedure section 363 provides: "The word 'action' as used in this Title [title 2, 'Time of Commencing Actions'] is to be construed, whenever it is necessary so to do, as including a special proceeding of a civil nature."

█ In general, the time limitations set out in part 2, title 2 of the Code of Civil Procedure apply equally to actions and special proceedings, pursuant to Code of Civil Procedure section 363. (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 321, p. 352, and cases cited therein.)

█ The various statutes discussed above (and particularly Code Civ. Proc., § 363) therefore compel the conclusion that a proceeding brought pursuant to section 9860 is an "action" subject to the statute of limitations in Code of Civil Procedure section 339(1). Indeed, section 9860 proceedings have been characterized as "actions" both by the courts (e.g., *Estate of Phelps* (1990) 223 Cal.App.3d 332, 340 [273 Cal.Rptr. 2]) and commentators. (E.g., Ross & Moore, Cal. Practice Guide: Probate (The Rutter Group 1990) ¶ 15:338, p. 15-81.)

This conclusion is not altered by the rule of *Estate of Hume* (1918) 179 Cal. 338 [176 P. 681], which holds that the statute of limitations cannot be asserted in proceedings for the probate or contest of a will. (*Id.* at pp. 340-346; see also *Graybiel* v. *Burke* (1954) 124 Cal.App.2d 255, 261 [268 Cal.Rptr. 551].) As we shall explain, it does not follow that all proceedings which begin in probate court are likewise exempt from statutes of limitations. On inspection, the reasoning of *Hume* turns out to be peculiarly applicable to the proceedings which were at issue in that case and does not properly extend beyond those proceedings.

---

[2]Code of Civil Procedure section 20 provides: "Judicial remedies are such as are administered by the Courts of justice, or by judicial officers empowered for that purpose by the Constitution and statutes of this State."

Code of Civil Procedure section 21 provides: "These remedies are divided into two classes: [¶] 1. Actions; and, [¶] 2. Special proceedings."

Code of Civil Procedure section 22 provides: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

Code of Civil Procedure section 23 provides: "Every other remedy is a special proceeding."

The court in *Hume, supra*, 179 Cal. 338, reasoned that proceedings to probate or contest a will could not be subject to statutes of limitations because: (1) the chapter of the Civil Code which then governed the probate of wills (former §§ 1312-1318) set out an exhaustive list of reasons, not including the statute of limitations, which could be offered to contest a will, thus in effect excluding the statute of limitations as a ground which could be asserted to oppose probate (179 Cal. at pp. 341-342); (2) the universal practice and understanding of the state's bench and bar showed that statutes of limitations did not apply to the probate of wills, because wills were routinely probated long beyond apparently applicable limitations periods without any attempt by anyone to raise the statute of limitations as a bar (*id.* at pp. 343-344); (3) the Legislature had acquiesced in this universal custom ever since the adoption of the 1872 code (*id.* at pp. 345-346); and (4) Code of Civil Procedure section 363 could not apply to all special proceedings of a civil nature, because if it did then the statute of limitations would apply to proceedings for a change of name, or in arbitration, or for voluntary dissolution of a corporation, or for guardianship, or for a married woman to become a sole trader, as soon as the right to institute such proceedings accrued, yet ". . . from the very nature of these proceedings it is obvious that neither [*sic*] of them could be subject to such limitation." (179 Cal. at pp. 342-343.)

Only the last point has any potential bearing on proceedings in probate court which do not involve the probate or contest of a will; but given the court's failure to define what the proceedings it enumerates have in common that renders statutes of limitations inapplicable to them, this remark offers little guidance. We see nothing therein which could overcome the presumption that special proceedings not among those enumerated by the court in *Hume* are "actions" within the meaning of Code of Civil Procedure section 363. (3 Witkin, *op. cit. supra*, Actions, § 321, p. 352.) The remainder of the court's reasoning is inapplicable to the present case, since the probate or contest of Pearl Crosley's will is not at issue.

■ Moreover, there are policy grounds for finding that statutes of limitations do not apply to the probate or contest of a will which are inapposite to the proceedings in our case. The purpose of probating a will is to determine and implement the testator's intent as nearly as possible. (§ 6140, subd. (a); 12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 244, pp. 278-280, and cases therein cited.) Since the testator could not have intended the distribution of his or her estate to be frustrated by a statute-of-limitations bar, it would be unreasonable to invoke the statute of limitations as a bar to the probate or contest of a will. Here, by contrast, there is no issue as to the testator's intent; the issue, so far as it concerns

probate, is whether a particular item of property (one-half of the judgment proceeds) belongs to the estate. Statutes of limitation apply to analogous disputes over the ownership of property. (Code Civ. Proc., §§ 315-330 [actions for the recovery of real property]; 336 [action for mesne profits of real property]; 338, subd. (c) [action for specific recovery of personal property].)

We think that *Estate of Jacobson* (1942) 56 Cal.App.2d 255 [132 P.2d 229], supplies guidance in the present context. There, the court held that the state's proceeding against an incompetent's estate to order the guardian to pay money for the incompetent's treatment in a state hospital, although begun with a petition for an order in the estate matter, was governed by the statute of limitations (Code Civ. Proc., § 345) in part because, "The instant proceeding has all the characteristics of an action at law. The petition ended with a prayer for an order requiring the guardian to pay the Department of Institutions for the support of the incompetent, for an order requiring the guardian to sell the assets of the estate if necessary for the purpose of complying with the order, and for general relief; an answer was filed raising issues of fact. The order that was made was in fact a judgment for the payment of money. [Citation.] The fact that the proceeding is one within the administration of the incompetent's estate does not distinguish it in its essentials from an ordinary action at law or in equity. . . . The adjudication is just as conclusive on the parties as if rendered in an action at law, . . ." (56 Cal.App.2d at p. 258.)

The analysis of the court in *Jacobson* applies equally to Walker's petition in the present case. Like an "action" defined in Code of Civil Procedure section 22, the petition asserted a claim for the declaration and enforcement of a right against an adverse claimant. It sought an order requiring the trustee of the trust account to pay money to the petitioner; it set out factual claims which controverted the theory on which the Parkers' previously filed petition was grounded; and its adjudication was conclusive on the parties. The fact that Walker's proceeding against the estate began with a petition filed in probate does not make the reasoning of *Hume, supra,* 179 Cal. 338, apposite, in view of the general rule that Code of Civil Procedure section 363 normally applies to special proceedings as well as to actions (3 Witkin, Cal. Procedure, *op. cit. supra,* Actions, § 321, p. 352) and the specific similarities of Walker's proceeding to that described in *Jacobson, supra,* 56 Cal.App.2d 255.

Finally, the purpose of the statute of limitations would be served by its application in section 9860 proceedings. ■ Statutes of limitation are designed to promote justice by preventing surprises through the revival of

claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. (*Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 898 [218 Cal.Rptr. 313, 705 P.2d 886].) ■ As this case illustrates, where Walker's claim is premised on an oral agreement entered into nearly 30 years ago, the purpose of the statute of limitations is well served by its application in these proceedings. We can think of no reason why persons should be able to advance stale claims to property, free of any statute of limitations, simply because the claim is adjudicated in the probate court.

We therefore conclude Walker's petition in probate initiated an "action" subject to the statute of limitations in Code of Civil Procedure section 339(1).

D. *Walker's action was barred by Code of Civil Procedure section 339(1).*

The Parkers assert that since Walker's claim of entitlement to the entire judgment proceeds was based on the purported oral agreement between himself and Crosley governing the sale of the business to Prupas, it necessarily falls within Code of Civil Procedure section 339(1).

■ "The statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded. [Citations.]" (*Day* v. *Greene* (1963) 59 Cal.2d 404, 411 [29 Cal.Rptr. 785, 380 P.2d 385].) As this court has said, "Neither the caption, form, nor prayer of the complaint will be deemed conclusive in determining the nature of the liability from which the cause of action flows. On the contrary, the true nature of the action will be ascertained from the basic facts *a posteriori.*" (*Agair Inc.* v. *Shaeffer* (1965) 232 Cal.App.2d 513, 516 [42 Cal.Rptr. 883].)

■ Here, the basic right sued upon by Walker was his right to enforcement of the oral agreement whereby he and Crosley agreed that Crosley would receive $3,000 for assignment of his interest in the lease and the parties would share equally any profit or loss on the installation of the equipment. In other words, Walker asked the trial court to find that his right to the full judgment proceeds was predicated on this oral agreement. Thus his claim was "An action upon a contract . . . not founded upon an instrument of writing" within the meaning of Code of Civil Procedure section 339(1). By reciting the terms of the alleged oral agreement as the sole grounds for its finding that Crosley's heirs were entitled to no part of the judgment proceeds, the trial court showed that it accepted Walker's claim the case was governed by that oral agreement.

Walker asserts the trial court was correct in rejecting the statute of limitations defense because Walker is not suing Crosley for breach of an oral

contract. However, as we have recounted, the oral contract is the centerpiece of Walker's claim. If Walker is not suing for breach, he is suing for enforcement of the oral agreement. In a suit to enforce an oral agreement, the statute of limitations in Code of Civil Procedure section 339(1) begins to run when the oral contract is repudiated. (*Viau* v. *Viau* (1922) 57 Cal.App. 66, 71 [207 P. 39].) Here, Crosley repudiated the pertinent agreement before his death in 1967 when he refused to acknowledge that Walker was entitled to all the judgment proceeds. The statute of limitations began to run at that time and barred claims asserted by Walker for the first time in 1989.

■  Walker asserts that his action was not "upon the contract" in any sense, but rather was an action to compel performance of a trust. Even if we were to accept this characterization of the action, it would not help Walker. Since he produced no evidence of any writing under which trustee Hoseit was required to pay him the full judgment proceeds, the "trust" to which he refers can only be a purported "obligation . . . not founded upon an instrument of writing" within the meaning of Code of Civil Procedure section 339(1). An action on this purported trust is barred by that section's statute of limitations. (See, e.g., *Meyers* v. *Guardian Life Ins. Co.* (1937) 20 Cal.App.2d 268, 270-271 [66 P.2d 753].)[3]

■  Third, Walker asserts that if Code of Civil Procedure section 339(1) applies to his claim, it must apply equally to the Parkers' claim, thereby preventing either claim from being adjudicated or the judgment proceeds ever being released from the trust account. This argument is not well taken. The Parkers' claim to one-half the judgment proceeds is not based on any purported oral agreement. It is based on the presumption that the Parkers own a one-half interest in the judgment proceeds as Crosley's successor in interest. Because that presumption was not rebutted by evidence which the trial court could properly consider, it controls the outcome as a matter of law.

---

[3]Invoking authority for the rule that the statute of limitations does not run against the right of action to enforce an express trust until the beneficiary has knowledge of repudiation or breach of trust (*Cortelyou* v. *Imperial Land Co.* (1913) 166 Cal. 14, 20 [134 P. 981]; *Kroger* v. *Truitt* (1945) 27 Cal.2d 288, 293 [163 P.2d 735]), Walker asserts: "There was no evidence that the holder of the trust funds, HOSEIT, ever repudiated the rights of WALKER to these funds." On the contrary, Hoseit made clear to Walker from the moment he learned of Walker's claim to 100 percent of the judgment proceeds, by his repeated attempts to persuade Walker to allow him to disburse funds from the trust account to Crosley or to agree to a settlement with Crosley (and thereafter with his successors in interest), that he did not accept that claim as valid.

It is true that Hoseit never "repudiated" Walker's right to the 50 percent share of the judgment which was his by statutory presumption (Civ. Code, § 686), but that right is not in dispute. The issue in this litigation is Walker's claim to the remaining half of the judgment. Hoseit never acknowledged any trust obligation toward Walker as to those funds.

We conclude Walker's section 9860 action was barred by the statute of limitations in Code of Civil Procedure section 339(1) and the trial court erred in ruling to the contrary.

### III

In his petition for a rehearing, Walker contends that the sum of $2,250, allegedly forming part of the trust account, should be awarded to him alone because it represents the proceeds of a settlement on a cross-complaint filed by Walker alone arising out of the original complaint. The parties disputed at trial whether the $2,250 in question actually went into the trust account. Because it found that Walker was entitled to the entire trust account, the trial court did not need to resolve this dispute. In light of our holding, it is necessary to remand the matter to the trial court to make a factual determination on this question. If the trial court determines that the $2,250 belongs to Walker, the court is directed to award that sum plus the interest thereon to Walker in addition to the one-half of the trust fund to which he is entitled as co-owner of the judgment in Walker v. Prupas. The court is directed to award the remainder of the trust account to the Parkers, 75 percent to Michael Parker and 25 percent to Glen Michael Parker.

### IV

Walker finally contends for the first time on appeal that the Parkers are entitled to no more than $8,000 plus interest from the trust account because the order for final distribution in probate conclusively determined that their contingent claim against Walker was worth this sum. In other words, Walker asserts that the order for final distribution must be given res judicata effect on this question. This assertion comes too late. The defense of res judicata must be pleaded and proved at trial by the party asserting it, or it is waived. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 198, pp. 636-637, and cases there cited.) By failing to raise res judicata as a defense to the Parkers' claim either in his petition in probate or at trial, Walker has waived this defense.

### DISPOSITION

The judgment is reversed. The matter is remanded to the trial court so that the court may make a factual determination as to whether the sum of $2,250, alleged by Walker to represent proceeds of a judgment awarded to him alone (see III, *ante*), forms part of the trust account. If the court finds that it does, the court is directed to award that sum plus interest to Walker in addition to the one-half of the trust account to which he is entitled as co-owner of the

judgment in Walker v. Prupas. The court is further directed to award the remainder of the trust account to the Parkers, 75 percent to Michael Parker and 25 percent to Glen Michael Parker. Appellants shall recover their costs on appeal.

Puglia, P. J., and Scotland, J., concurred.

A petition for a rehearing was denied May 12, 1992, and June 5, 1992, and respondent's petition for review by the Supreme Court was denied August 12, 1992.